## PHOENIX PRINTING CO. v. ROBERTSON.

No. 9953—Opinion Filed Feb. 1, 1921.

(Syllabus by the Court.)

### 1. Libel and Slander—Classes of Libelous Words.

Words charged to be libelous may be divided into three classes: First, those that cannot possibly bear a defamatory meaning; second, those that are reasonably susceptible of a defamatory meaning, as well as an innocent one; third, those that are clearly defamatory on their face.

### 2. Same—Construction of Words.

Words used in an alleged libelous article are to be construed by their most natural and obvious meaning, and in the sense they would be understood by those reading the article.

### 3. Same—Words Not Actionable Per Se—Allegations—Innuendo.

If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts and circumstances, such extrinsic facts and circumstances must be set forth and connected with the words charged by a proper averment. Words not actionable per se may be made to appear actionable by averring such extrinsic facts as will show that they were intended to be libelous and were so understood. These averments must be distinctly stated in the inducement, and applied to the plaintiff by a proper colloquium, with the intended and understood meaning correctly set out in the innuendoes.

### 4. Same—Trial—Questions for Court and Jury.

If alleged defamatory words are not actionable on their face, but derive a defamatory import from extrinsic facts and circumstances which are pleaded by way of inducement, colloquium, and innuendo, it be-

comes the duty of the trial court to determine whether the language used in the publication can fairly and reasonably be construed to have a meaning imputed to it by the pleader, and if the court determines the words are susceptible of the meaning attributed to them by the pleader, it then becomes a question of fact for the jury to determine under all the circumstances whether they were intended to mean what the pleader avers they do.

### 5. Same—"Libelous Words"—Requisites.

The fact that a publication may be unpleasant and annoy or irk the subject thereof, and may subject him to jest or banter, so as to affect his feelings, is not, standing alone, sufficient to make it libelous. In order to be libelous it must tend to lower him in the opinion of men whose standard of opinion the court can properly recognize or tend to induce them to entertain an ill opinion of him.

### 6. Same—Words Not Actionable Per Se—Direction of Verdict.

If the alleged defamatory words are not actionable upon their face, but derive their defamatory import from extrinsic facts and circumstances, it is error for the trial court to instruct the jury to return a verdict for the plaintiff.

Error from District Court, Muskogee County; Chas. G. Watts, Judge.

Action by Charley Robertson against the Phoenix Printing Company for libel. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Joseph C. Stone, Charles A. Moon, and Francis Stewart, for plaintiff in error.

Don M. Crump, Myron White, and W. J. Crump, for defendant in error.

McNEILL, J. This controversy arose over the publication of an article in the Muskogee Daily Phoenix, a daily paper published by the Phoenix Printing Company in the city of Muskogee, on May 24, 1914. The publication complained of is as follows:

"Man's Tango Talk Proved Provoking— This Way Out, Sir. Charley Robertson. a Chauffeur, Didn't Make a Hit With His Opinion.

"Just what Charley Robertson, a chauffeur thinks about the tango will probably never be known. Charley started to tell last night as he was tripping the light fantastic at Leighton's Hall, South Fourth street.

"He had no more than started before he was interrupted. He left the hall hurriedly, in his haste leaving a shoe, his coat, and a few minor whatnots of his apparel behind him. If it were not for the fact that the Leighton Hall is on the second floor and a flight of stairs lead up to it—and also down—

Charley's exit might have been more gracefully accomplished.

"As it was, Charley descended the stairs very awkwardly—principally on an ear, witnesses said after they could be quieted. His departure was followed by an almost equally hurried exit of about fifty or more girls, shrieking and screaming that murder was being done. Robertson was encoring their sentiments.

"A call went to the police and a detective took Robertson in tow. It is presumed that he was taken home, as he was not brought to police headquarters.

"Those at the dance declared that the proprietor of the dance hall ejected Robertson."

The plaintiff in his petition pleaded by way of innuendo that the article accused the plaintiff of being drunk, rude, profane, immoral, indecent, and guilty of disturbing the peace. It was further alleged that the article was false, malicious, unprivileged, and exposed the plaintiff to contempt and ridicule by imputing to him that he was a man of base character without shame and self-respect and a drunken and immoral citizen.

The defendant filed a demurrer to the petition, which was overruled, and then filed an answer, setting up numerous defenses. At the close of the evidence the court instructed the jury that the article was libelous per se and directed the jury to return a verdict for the plaintiff in a sum of not less than $100 nor more than $10,000. The plaintiff in error assigned this as error, contending the article is not libelous per se.

In determining whether the article is libelous per se, it is essential to recognize certain well-established rules that are recognized by this court in determining that question. This court, in the case of Kee v. Armstrong, Byrd & Co., 75 Okla. 84, 182 Pac. 494, has classified articles purported to be libelous under three classifications: First, those that cannot possibly bear a defamatory meaning; second, those that are reasonably susceptible of a defamatory meaning as well as an innocent one; third, those that are clearly defamatory upon their face.

In determining to which class the publication belongs, the following rule must be applied:

"Words used in an alleged slanderous communication or article are to be construed by their most natural and obvious meaning, and in the sense that would be understood by those to whom it was addressed." Kee v. Armstrong, Byrd & Co., supra.

If we apply this rule and give to the words used in said publication their most natural and obvious meaning, can we say that there

are any words in the publication that are defamatory, or does this article come within that class of articles that are reasonably susceptible of a defamatory as well as an innocent meaning?

The article alleges: First, that the plaintiff was dancing; second, that he attempted to tell what he thought of tango; third, that he was interrupted; fourth, that he left the hall hurriedly, leaving his shoe, coat, and other apparel behind him; fifth, that he descended the stairs very awkwardly, principally on an ear; sixth, that his departure was followed by about 50 girls, shrieking and screaming that murder was being done; seventh, that Robertson was encoring the sentiments of the girls; eighth, that a detective took Robertson in tow, and it was presumed he was taken home, as he was not taken to police station; ninth, that he was ejected by the proprietor from the dance hall. If the words used in the article are given their ordinary meaning, we know of no crime that Robertson was accused of committing, nor do the words used in the publication accuse him of any crime or any misconduct. The petition alleged that the article intended to accuse him, and to be understood as accusing him, of being rude, profane, immoral, indecent, and guilty of disturbing the peace. If it accuses him of any of those acts, or offenses, it does not do so by direct language, but, if at all, must be by reference to extrinsic facts and circumstances.

That being true, the article is not libelous per se, but comes within that class of publications that may be defamatory, and it was necessary to plead and prove the extrinsic facts and circumstances, as announced by the court in Kee v. Armstrong, Byrd & Co., supra, as follows:

"If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts and circumstances, such extrinsic facts and circumstances must be set forth and connected with the words charged by a proper averment. Words not actionable per se may be made to appear actionable by averring such extrinsic facts as will show that they were intended to be slanderous and were so understood. These averments must be distinctly stated in the inducement, and applied to the plaintiff by a proper colloquium, with the intended and understood meaning correctly set out in the innuendoes."

The defendant in error relies upon the case of Dimmitt v. McDowell, 60 Okla. 88, 159 Pac. 290. The syllabus in that case announces the correct rule of law, but the Commissioner did not apply the law he announced in the syllabus to the facts in the case. The body of the opinion in that case contains the following statement:

"It is true that the article is so written that it could be argued that Mrs. Dimmitt is not charged with theft; but no reasonable construction could be used other than that she was charged with that crime. The insinuation of theft is strong, and the natural and obvious meaning of the article to those who might read it is that Mrs. Dimmitt committed the crime of theft."

If this statement was true, the article did not charge Mrs. Dimmitt with theft, nor did the words used in the article have such a meaning, but if it charged her with a crime, it must be by reference to extrinsic facts and circumstances. That being true, the article was not libelous per se, but comes within the class of articles that might have an innocent meaning, and in those cases it is essential to plead by way of inducement, colloquium, and innuendo that the article was intended to have a libelous meaning, and was so understood by those reading it.

The Supreme Court of Alabama, in the case of Gaither v. Advertiser Co., 14 South. 788, announced what the questions were for the court to determine in such cases and what questions were for the jury, and in doing so stated as follows:

"In other words, the court determines whether the words used are susceptible of the meaning sought to be given to them by the innuendo. If this inquiry is decided by the court against the contention of the pleader, this puts an end to it; for it is not permissible to make proof that the words employed were uttered in the sense, or with the meaning imputed to them in the innuendo. That is not the subject of proof. If it be decided by the court that the words are susceptible of the meaning the innuendo seeks to ascribe to them, then it becomes a question for the jury to determine, under all the circumstances, whether they were intended to mean what the innuendo avers they did."

So, in the instant case, the language in the article is not defamatory, but might be so by extrinsic facts. It then becomes a question of fact for the jury to determine whether the article was really intended to mean what the pleader avers it did. There was some evidence that plaintiff's friends jested or joked him about the article, and it might be suggested, although not argued, that the article was libelous because it would tend to hold the defendant in error up to ridicule, but, as stated in the case of Cohen v. New York Times, 153 App. Div. (N. Y.) 242:

"The fact that a publication may be unpleasant and annoy or irk the subject there-

of, and may subject him to jest or banter, so as to affect his feelings, is not, standing alone, sufficient to make it libelous. In order to be libelous it must tend to lower him in the opinion of men whose standard of opinion the court can properly recognize or tend to induce them to entertain an ill opinion of him."

The publication, without pleading extrinsic facts, would not bring the case within the rule stated above. It therefore follows that the court committed error in holding the publication libelous per se and instructing the jury it was their duty to return a verdict for plaintiff. The article is not libelous per se, but comes within that class of publications that may have a defamatory meaning or may have an innocent meaning, and that question is to be determined by the jury under proper instruction from the court.

There are other assignments of error, but it is unnecessary for us to pass upon them at this time, as this error necessitates the reversal of the case for a new trial.

For the reasons stated, the case is reversed and remanded, with instructions to grant the plaintiff in error a new trial.

PITCHFORD, V. C. J., and MILLER, NICHOLSON, and ELTING, JJ., concur.