### TULSA TRIBUNE CO. v. KIGHT.

No. 23598.    Sept. 25, 1935.

Rehearing Denied Oct. 29, 1935.

Biddison, Campbell, Biddison & Cantrell, for plaintiff in error.

Holtzendorf & Holtzendorf and Robson & Moreland, for defendant in error.

OSBORN, V. C. J. On April 15, 1930, H. Tom Kight, as plaintiff, filed this action in the district court of Rogers county against the Tulsa Tribune Company, wherein he sought to recover damages for the publication of an alleged libelous article in the Tulsa Tribune. The issues were joined and the cause was tried to a jury. A verdict was rendered in favor of plaintiff for $10,000. From a judgment thereon the defendant has appealed. The parties will be referred to as they appeared in the trial court.

Plaintiff alleged in his petition that he was a member of the House of Representatives, having been elected to said office by the voters of Rogers county; that on January 5, 1930, defendant published in the Tulsa Tribune, a daily newspaper of large circulation in Rogers county, a certain libelous article which is as follows:

"So, on January 28, the Senate exonerated all of its members from any charges, and officially reprimanded Magee and Representative Kight, who had given currency to various charges, and likewise failed to substantiate them. Kight, in furtherance of the big aim of getting rid of Johnston, and to remove prejudices against him, had apologized to the Senate."

Plaintiff further alleges:

"The plaintiff alleges that the said quoted statement is a part of a story carried in the said paper, and on the date given, a copy of which is attached hereto, marked 'Exhibit A,' and made a part hereof, and the plaintiff alleges that the statement made in said article charging the plaintiff with giving currency to various charges and likewise failing to substantiate them, and the part which states that he was officially reprimanded by the Senate, and that he had apologized to the Senate, were false, unprivileged, malicious, and unjustifiable, and which tended, and does tend to deprive the plaintiff of public confidence, and to injure him in his occupation, was maliciously designed for such purpose, and in effect charging the plaintiff, and left a printed record in existence against the plaintiff, that he had made false statements—statements which were untrue, and that this fact had been adjudicated by the Senate, and that he had been officially reprimanded by it, and on account of it, the plaintiff has sustained damages generally, and specially to his reputation and good name in the sum of $50,000."

For answer the defendant filed a general denial and alleged further:

"Defendant specifically denies that it published false, untrue, malicious or unprivileged statements concerning the plaintiff on Sunday, January 5, 1930, or on any other date.

"Said defendant alleges and states that if it published any statements concerning the said plaintiff, said statements grew out of plaintiff's connection with the Legislature of the state of Oklahoma, and his participation as a member of the Legislature in a purported session thereof, at which certain charges were made against certain members of said Legislature. During said purported meeting of the Legislature, said plaintiff had made statements as to the use of private funds for the purpose of paying the expense of that particular session of the Legislature, and the circulation of these reports, whether by plaintiff or others, caused an investigation to be made by the Senate, and after said investigation was made, plaintiff, Kight, stated the testimony had convinced

him that the acts of the Senate in voting to adjourn December 28, 1927, was not prompted by ulterior motives. Said plaintiff further stated as follows: 'I now desire to express my implicit confidence in the Senate.'

"Said defendant states that in such articles as it may have written in connection with this session, or purported session of the Legislature, it was acting only as an unbiased newspaper in attempting to give its readers the news in regard to said session, which was of great public interest, and that it did not act with any motive of malice in publishing such statements, and such statements were not malicious, and were not intended to injure the plaintiff.

"Said defendant further states that plaintiff was not injured by said publication, and that he has not been damaged thereby."

The facts surrounding the publication of the article are as follows: In December, 1927, the Legislature of Oklahoma attempted to convene itself, manifestly for the purpose of investigating certain charges against Henry S. Johnston, then Governor of Oklahoma. On December 28, 1927, late in the afternoon, the Senate voted that it was legally in session, and at 8 o'clock the next morning the Senate voted that it was not legally convened and the attempted session broke up. At that time plaintiff was a member of the House of Representatives. It appears that thereafter Carl Magee, who was editor of the Oklahoma News, published certain articles in said newspaper charging that money had passed to some of the Senators to prevent the continuation of the special session of the Legislature. Thereafter, when the Senate convened in regular session in January, 1929, a special committee was appointed to investigate such reports or charges against the members of the Senate. The investigation was held and the committee reported to the Senate that the charges were groundless and that all reports in the press and otherwise indicating such improper conduct on the part of the members of the Senate were wholly unwarranted, It is agreed that thereafter plaintiff gave to the press the following statement:

"At the time the Senate adjourned on the 28th day of December, 1927, like a great many others I was disappointed, because I had made what I thought was an exhaustive study of the law and felt that the Legislature was in legal session, and should be for the purpose for which it was attempted to be called, Rumors were current and I heard them discussed freely and had opinions and imaginations which were possibly not very much different to the average citizen, but I have listened attentively to the investigation which the Senate has been making, and I have come to the conclusion, as no doubt most others have, that if there were funds raised, it does not appear that it involved any member of the Senate. Since I have watched this investigation and tried to ascertain if some of the rumors which I have heard were true or false, I have made up my mind that the action of the Senate was not prompted by ulterior motives, and I desire now to express my implicit confidence in the Senate."

On January 5, 1930, the alleged libelous article was published in the Tulsa Tribune as a part of an article reviewing the political history of Oklahoma during the year 1929.

The burden of plaintiff's testimony was to the effect that he had never given currency to any charges of improper conduct against any member of the Senate. He stated that his motive in refraining from making any such charges was that he was one of the prosecutors of the case against the Governor in the Senate and that he was attempting to stay within the good graces of the Senate to avoid any prejudice against him on the part of Senators which might affect the final determination of the impeachment charges by the Senate. He also testified that the Senate had not reprimanded him and that he had not apologized.

The alleged libelous article was not published as an item of current news, but as a review of events that had transpired during the previous year. Although considerable comment was contained in the article, plaintiff contends that the statements complained of were statements of fact and not of comment. The theory of defendant is that the statements are in effect the conception of the writer as to what the facts actually were, and that each of the statements was justified by the actual facts. It would serve no useful purpose to recite the various items of evidence relied upon by defendant to justify the deductions of fact made by the writer of the article. It is agreed that under the pleadings and proof the right of plaintiff to recover depends upon the establishment of the article as libelous per se.

By section 724, O. S. 1931, "libel" is defined as "a false or malicious unprivileged publication by writing, * * * which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation. * * *"

"The term 'per se' means by itself; simply as such; in its own nature without reference

362

to its relation; and in connection with slander and libel, the term is applied to words which are actionable because they, of themselves, without anything more, are opprobrious. In other words, a publication is actionable per se when the language used therein is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff and not to some other person." Marland Ref. Co. v. Harrel, 167 Okla. 548, 31 P. (2d) 121; Fite v. Oklahoma Pub. Co., 146 Okla. 150, 293 P. 1073; Wimmer v. Oklahoma Pub. Co., 151 Okla. 123, 1 P. (2d) 671.

"In determining whether the article is libelous per se, the article alone must be construed, stripped of all insinuations, innuendo, colloquium, and explanatory circumstances. The article must be defamatory on its face." Holway v. World Pub. Co., 171 Okla. 306, 44 P. (2d) 881.

"There is no fixed rule by which the court can determine whether or not a statement is libelous per se, and the statement alleged to be defamatory must be examined before it can be determined whether or not it is libelous per se." Holway v. World Pub. Co., 171 Okla. 306, 44 P. (2d) 881.

"Words used in an article alleged to be defamatory are to be construed by the most natural and obvious meaning, and in the sense that would be understood by those to whom they were addressed." Wimmer v. Oklahoma Pub. Co., supra.

See, also, Matthews v. Oklahoma Pub. Co., 103 Okla. 40, 219 P. 947; Fite v. Oklahoma Pub. Co., supra; Kee v. Armstrong, Byrd & Co., 75 Okla. 84, 182 P. 494.

"A publication is actionable per se when the language used therein is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff and not to some other person." Lindley v. Delman, 166 Okla. 165, 26 P. (2d) 751.

"* * * No strained, forced or unnatural, but the most natural and obvious, meaning must be given the article in the sense that clearly belongs to the words used. Whether or not it is libelous depends upon the scope, spirit, and motive of the publication taken in its entirety.

"Injury to reputation and not to the feelings of the individual is the subject of redress. The language in the alleged libelous article must be such as to tend to lower plaintiff in the estimation of men whose standard of opinion the court can recognize." Wiley v. Oklahoma Publishing Co., 106 Okla. 52, 233 P. 224.

"The fact that a publication may be unpleasant and annoy or irk the subject thereof, and may subject him to jest or banter, so as to affect his feelings, is not, standing alone, sufficient to make it libelous. In order to be libelous, it must tend to lower him in the opinion of men whose standard of opinion the court can properly recognize or tend to induce them to entertain an ill opinion of him." Wimmer v. Oklahoma Publishing Co., supra; Fite v. Oklahoma Pub. Co., supra; Phoenix Printing Co. v. Robertson, 80 Okla. 191, 195 P. 487.

We pass to an analysis of the statements contained in the article which plaintiff contends are libelous per se. It is stated in the nature of a conclusion, which we will deal with as a statement of fact, that "Representative Kight had given currency to various charges, and had likewise failed to substantiate them." It is not charged that plaintiff was the instigator of a false rumor or report concerning any person, but that he had "given currency" to various charges. The plain and obvious meaning of this language is that plaintiff was one of those responsible for the circulation of the "various charges" or, in other words, that he had repeated statements which he had heard to other persons. There is no inference of bad faith on the part of plaintiff inferred within the four corners of the instrument and nothing to overcome the general presumption that plaintiff was in good faith as a purveyor of information which had come to him and which was not sustained at a later date.

There is nothing upon the face of the instrument which indicates the nature of "the various charges" referred to. Whether they were charges of criminality, corruption, malfeasance or misfeasance in office, or whether they were charges of misconception of the duties of office or of neglect or failure to perform such duties does not appear. Until the nature of the various charges which the writer states were given currency by plaintiff is made to appear, we cannot ascribe a defamatory import or meaning to the language used. The writer of the article further informs the public that plaintiff was officially reprimanded, the reasonable inference being that he was reprimanded for giving currency to various charges. Plaintiff contends that such language carries with it an imputation of misconduct in office, and tends to deprive him of public confidence and is opprobrious within the meaning of section 724, supra, defining libel. In considering this statement in connection with the entire article we cannot say that the only meaning or import of the language is

an approbrious one. No wrongful or improper motive is ascribed to plaintiff in giving currency to various charges. A reprimand would not have the effect of imputing such bad faith or improper motive, and in the absence thereof the natural and obvious effect of such reprimand would indicate an attitude of disapproval on the part of the Senate of repeating or circulating rumors and reports without determining or ascertaining in advance whether such rumors or reports could be substantiated by proof.

Plaintiff further complains of the statement that he had apologized to the Senate, and contends that the statement is false. Defendant relies upon the interview given to the newspapers by plaintiff, which is hereinabove set forth, as justification for the statement that the plaintiff had apologized, but it is not necessary to determine whether such statement was or was not justified. Plaintiff complains of the inference cast by this statement, which is that he had been guilty of conduct which made an apology necessary. Without such inference there could be no defamation in such statement. In determining the full import of the language complained of it is necessary to consider the entire sentence containing such charge, which is, "Kight, in furtherance of the big aim of getting rid of Johnston, and to remove prejudices against him had apologized to the Senate." Plaintiff testified that he was one of the prosecutors of the Governor in the Senate and that it was his purpose to avoid any ill feeling on the part of any member of the Senate against him in order that the case against the Governor would not be prejudiced. His own testimony and attitude in this case substantiates the inference left by the writer of the article to the effect that in making what he (the writer) considered to be an apology, plaintiff was attempting to establish himself in the good graces of the members of the Senate. In the setting in which the statement is made it definitely appears that there is no inference that plaintiff was guilty of such conduct as to require an apology to the Senate. But, on the other hand, the inference is that the overture made by him toward the Senate, which the writer named an apology, was for a definite purpose, having to do with the ultimate object sought to be accomplished, that is, impeachment of the Governor. The statement on its face is not libelous, and we fail to find an inference contained within the four corners of the instrument which makes it so.

An examination of the entire article fails to disclose any charge or implication against plaintiff which reflects upon his character, honesty, ability, or fitness to perform the duties of his office. Since there is no charge of improper conduct against him and since he is not attributed with bad faith or an improper motive for any of his official acts by any language contained within the article, we cannot see that the effect of the publication of said article would be to expose him to public hatred, contempt, ridicule, or obloquy or deprive him of public confidence, or injure him in his occupation. The article is not libelous per se, and plaintiff may not recover without pleading and proving special damages.

Defendant contends that the action was improperly brought in Rogers county for the reason that the evidence does not sufficiently show the publication of the article in Rogers county, and does not show damages arising in said county. This contention is without merit, as the evidence shows that the article was published in Rogers county and was read by the citizens of said county. It is clear that if defendant suffered damages at all, they were suffered in Rogers county, the county of his residence. Under the rule announced in the case of Tulsa Tribune Co. v. Dixon, 161 Okla. 196, 17 P. (2d) 470, the action was properly instituted in Rogers county.

The judgment of the trial court is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, CORN, and GIBSON, JJ., concur. WELCH, J., dissents. BAYLESS, J., disqualified and not participating.