## FRANKLIN v. WORLD PUBLISHING CO.

No. 28137. Oct. 11, 1938.

Amos T. Hall, P. A. Chappelle, and Primus C. Wade, for plaintiff in error.

M. A. Breckinridge, for defendant in error.

DAVISON, J. This is an appeal from a judgment of the district court of Tulsa county. The plaintiff, B. C. Franklin, brought this action against the World Publishing Company for damages based upon an alleged defamatory publication.

The defendant demurred to the plaintiff's petition. The demurrer was sustained, and the plaintiff has appealed.

The published article complained of, in so far as it refers to the plaintiff and is necessary to consider here, is as follows:

"'Dire calamity circled over the Joe Louis Club like a hungry turkey buzzard Monday afternoon.

"'Twice within recent months the club has been subjected to raids as a resort where gambling is illegally perpetrated and Judge Hatch's lips were straightened out in a thin, ominous line preparatory to exterminating the place altogether.

"'Eleven ill-at-ease negro boys shifted uneasily from one foot to the other out in front of the judge and Uncle Ben Franklin, Greenwood's legal luminary, braced back on his hind legs, loosened up his supple tongue, and rallied to the defense of the beleaguered institution.

"'"Jedge, that there Joe Louis club is a virtuous, charitable institution. Keeps pore colored nigger boys off'n the streets, gives 'em food and sustenance when they bellies whinnies fer food. Herbert Hill, the club managah, is addin' stahs to his crown in heben by runnin' the place. Please don't close it down."

"'Uncle Ben went on to Herb Hill, dressing him in raiment of the snowiest white. Declared him as innocent as a new-born lamb—with a soul as white as the driven snow. He dragged out a halo and tenderly placed it above Herb's brow and he called attention to the sprouting of downy wings on the good man's shoulders. Of course, the halo was a bit shop-worn and considerably tarnished, and the white wings a bit

bedraggled and moulting, but this was to be expected since Uncle Ben has been parading Herb around in these props for quite a spell now.

" ' "What I want to know," cut in Judge Hatch, who was surfeited with oratory, "is whether these 11 boys were gambling or not."

" ' "Now, jedge," placated the philosophical Ben, 'you knows that anywheres they's two, three nigger boys gits together, they's jes' simply gwine ter be a few li'l ole craps shot."

" ' "You knows and Ah knows," he finished in a resigned voice, "that eben ole St. Peter hisse'f is gonna have a hahd time keepin' these boys fum shootin' craps on the golden streets when they gets to heben." ' "

The plaintiff alleges in his petition that he is a member of the Negro race; that he is an attorney admitted to practice in the Supreme Court of Oklahoma and with good standing with the State Bar; that he had enjoyed the support, patronage, esteem, respect, and confidence of his neighbors and the people throughout the state; that his practice as an attorney was limited to members of his own race and that anything that tends to lower him in the estimation and esteem of the negroes in the city of Tulsa and elsewhere, by holding him up to scorn, ridicule, contempt, and hatred of negroes, is injurious to his profession as an attorney.

No special damages having been alleged, the petition was presented to the court upon the theory that the matter complained of was libelous per se.

The only contention presented is that the trial court erred in sustaining the demurrer to plaintiff's petition. If this contention is to be sustained, we must find that the publication complained of, shorn of the many innuendoes and inferences pleaded in the petition, was libelous per se and that it was unnecessary to allege any special damages. The words of the publication must, within themselves, be opprobrious.

Law writers have found much difficulty in defining libel. This court has generally adhered to statutory definition. In section 724, O. S. 1931, "libel" is thus defined:

"Libel is a false or malicious unprivileged publication by writing, printing, picture, or effigy or other fixed representation to the eye, which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation, or any malicious publication as aforesaid, designed to blacken or vilify the memory of one who is dead, and tending to scandalize his surviving relatives or friends."

If the language in the article complained of did not expose the plaintiff to public hatred, contempt, ridicule, or obloquy, or did not tend to deprive him of public confidence, or to injure him in his occupation, we must conclude that it is not libelous in any event. Furthermore, if the article within itself and without reference to its relation, stripped of all insinuations, innuendo, colloquium, and explanatory circumstances, is not defamatory on its face, it cannot be said to be libelous per se. Tulsa Tribune Co. v. Kight, 174 Okla. 359, 50 P.2d 350.

There is no fixed rule by which the court can determine whether or not a statement is libelous per se, and the statement alleged to be defamatory must be examined before it can be determined whether or not it is libelous per se. Fite v. Oklahoma Publishing Company, 146 Okla. 150, 293 P. 1073. The trial court held that the published statement was not libelous per se. Whether or not the trial court committed error is the only question presented to this court.

Portions of the particular language upon which libel was based included the word "nigger," as ascribed to have been used by the plaintiff.

It is contended that the word "nigger" is detestable to the members of the negro race, and the use of the word in public as ascribed to have been used by the plaintiff, held him up to scorn, hatred, ridicule, and contempt of the members of the negro race, and tended to deprive him of the public confidence, resulting in substantial injury to him as a lawyer.

Other language in the published article complained of as libelous contained the words: "Twice within recent months the club has been subjected to raids as a resort where gambling is illegally perpetrated." The further language relative to the plaintiff's praises of Herb Hill conclude with the words: "But this was to be expected since Uncle Ben has been parading Herb around in these props for quite a spell now."

The plaintiff contends that if the language here quoted were true, it would subject the plaintiff to disbarment proceedings or other disciplinary action at the hands of the court or State Bar of Oklahoma, since, if true, would show that plaintiff was engaged in shyster practice and in criminal conspiracy with the operation of a gambling

house to keep it open to commit illegal operations. The plaintiff further contends that the use of such illiterate and ungrammatical language as used in the article ascribed to have been used by plaintiff, portrays him as being illiterate and lacking in the preparation, skill, ability, and training of an attorney.

It is seriously contended that the portion of the article referring to the Joe Louis Club as a virtuous, charitable institution contains language libelous per se, owing to the type of language used and the wrongful representation as to the use of certain words.

In Tulsa Tribune Co. v. Kight, supra, this court held:

"Words used in an article alleged to be defamatory are to be construed by the most natural and obvious meaning, and in the sense that would be understood by those to whom they were addressed."

The published article complained of, as shown therein, represents a court trial proceeding upon gambling charges brought in an inferior court against a number of negro boys or men as offenders of the law.

The article appears to reflect upon the Joe Louis Club, the place where gambling seems to have been taking place. Repeated acts of such violation are referred to. The article, with considerable degree of jocularity, referred to the plaintiff, the legal defender of those charged. The acts and words attributed to the plaintiff in his defense of his clients are such as are commonly used by the more illiterate Southern Negro. The word "nigger," complained of, has been brought forward from the days of negro slavery and is today frequently used by both the white man and the negro in a friendly way without reflection or ill feeling. This practice, while not universal, is very common in the Southern states. At most, it is but an abbreviated or substituted form for the word "negro," and we are unable to see how the use of the word as generally used when referring to the negro casts any insult or reflection whatsoever. Many books have been written portraying the acts, habits, and language of the negro and written in negro dialect. These books are found in the public libraries of both races and are read with interest and appreciation.

The Chinaman is frequently referred to as a "Chink." The Northern man is often referred to as "Yankee" and the Southern man as "Rebel." The people of Oklahoma are referred to as "Sooners." The word "nigger" was nowhere used in the article to describe or to identify the plaintiff, but it was the ascribed use of the word by the plaintiff in his remarks before the court that is alleged to be offensive to the negro race and libelous in effect. It is contended that the type of language generally used in the article portrays the plaintiff as being illiterate and lacking in preparation, skill, and ability as an attorney.

The plaintiff has quoted in his brief from Phoenix Printing Co. v. Robertson, 80 Okla. 191, 195 P. 487, wherein this court held:

"The fact that a publication may be unpleasant, and annoy or irk the subject thereof and may subject him to jest or banter, so as to affect his feelings, is not, standing alone, sufficient to make it libelous. In order to be libelous it must tend to lower him in the opinion of men whose standard of opinion the court can properly recognize or tend to induce them to entertain an ill opinion of him."

Following the reasoning therein set forth, we are unable to agree that the article complained of or any particular part of same is libelous per se' when given to it that meaning which would naturally be ascribed thereto by those who would read the publication. We are unable to agree that the article, standing entirely alone, exposes the plaintiff to public hatred, contempt, or ridicule or tends to deprive him of public confidence or injure him in his profession as an attorney among his race, who are more or less familiar with his qualifications as an attorney and of his standing with the courts of his county and state. It therefore follows that the trial court committed no error in sustaining the defendant's demurrer to the plaintiff petition.

"Where a demurrer is interposed by the defendant to the petition of the plaintiff, the demurrer only admits the truth of the facts pleaded, but does not admit the truth of the inference of the pleader based on the facts pleaded, unless the facts themselves are sufficient to authorize such inferences." Hargrove v. Oklahoma Press Publishing Co., 130 Okla. 76, 265 P. 635; Holway v. World Publishing Co., 171 Okla. 306, 44 P.2d 881.

Judgment is affirmed.

OSBORN, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.