John F. CROZMAN, Plaintiff,

v.

Walter CALLAHAN, Defendant.

Miles MILLER, Plaintiff,

v.

Walter CALLAHAN, Defendant.

Civ. Nos. 6741, 6742.

United States District Court
W. D. Oklahoma.

Nov. 21, 1955.

Charlie D. Hicks, Midwest City, Okl., for plaintiffs.

Paul W. Cress, U. S. Atty., and H. Dale Cook, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

The plaintiffs, John F. Crozman and Miles Miller, instituted these two actions to recover for slanderous remarks allegedly made by the defendant, Walter Callahan, while all three were serving in the United States Air Force at Tinker Air Force Base, Oklahoma City, Oklahoma.

The defendant moves to dismiss both cases for failure to state claims upon which relief can be granted. Inasmuch as the alleged slanders arise out of the same general incident; and, because the two motions involve identical principles of law, both motions will be considered in this opinion.

In Case No. 6741, plaintiff Crozman asserts that while he "was going about the particular duties assigned to him of checking the guards stationed at the different posts on said base, that as plaintiff approached a certain building known as hangar No. 2, he was accosted by said defendant and in the presence of one Airman 2nd Class Miles Miller, said defendant, spoke, uttered, and published of and concerning of this plaintiff, certain slanderous, false, malicious, scandalous and defamatory words, in words as follows, to wit: 'You f—king bastards don't do anything but ride around on your fat asses.'"

In Case No. 6742, plaintiff Miller alleges that while he "was stationed at a guard post at the entrance of a building known as Hangar No. 2, he, the said plaintiff, was accosted by said defendant and in the presence of one Airman 2nd Class John F. Crozman, said defendant, spoke, uttered, and published of and concerning of this plaintiff, certain slanderous, false, malicious, scandalous and defamatory words, in words as follows, to wit: 'You God-damned Stooge.'"

Both complaints further allege, in substance, that these remarks tended to blacken and injure the honesty, virtue, integrity, morality and reputation of the plaintiffs and exposed them to public contempt and ridicule.

In essence, the defendant argues that inasmuch as at the time of the complained of incident he was discharging official military duties, his conduct was clothed with official immunity and that plaintiffs' sole mode of redress lies in military channels.[1] In addition, the defendant asserts that plaintiffs have failed to allege actionable claims of slander as a matter of substantive law.

■■■ Admittedly, the defendant was engaged in military duties at the time of the alleged remarks. However, such remarks if made,[2] can under no theory be deemed as furthering the official responsibilities resting upon the defendant. It is clear that a person in the military service has a civil remedy for any abuse of authority by his military superiors;[3] and, remarks of a

1. For general jurisdiction of military court see 50 U.S.C.A. §§ 551, 552. See in particular § 687 which provides: "any person subject to this chapter who is guilty of cruelty toward, or oppression or maltreatment of, any person subject to his orders shall be punished as a court-martial may direct." Also, see § 711 which states: "Any person subject to this chapter who uses provoking or reproachful words or gestures towards any other person subject to this chapter shall be punished as a court-martial may direct."

2. The defendant's version of the controverted incident, as shown by a sworn statement obtained by discovery, is that he said: "'Serg (Crozman), will you please go around to the front of the hangar and get my jeep and move it into the hangar?' He replied that he could not as his name 'was not on the trip ticket'. I wasn't sure I correctly understood him and I repeated my request and he gave me the same answer. I gave this order to get the said USAF jeep moved to its proper parking space. I did not address Airman Crozman any further, but speaking to the said Colonel Knoll I said something to the effect of 'I'll be an S.O.B. Did you ever hear anything like that in your life? Those people ride around on their ass all day in a car and can't move a jeep because their name is not on the trip ticket.' * * *"

3. See Nixon v. Reeves, 1896, 65 Minn. 159, 67 N.W. 989, 33 L.R.A. 506, where

slanderous character are no exception. The instant set of circumstances must be sharply distinguished from those wherein the asserted grievances arise out of activities properly falling within the scope of official duties, such as the administration of disciplinary action or functions wherein the military officials are acting in a judicial or quasi-judicial capacity. Obviously, where such circumstances exist the military officials must have the same freedom of action, without a fear of personal liability, as that enjoyed by civilian judicial authorities.[4] Significantly, however, an officer, even when acting within the scope of his authority, can incur civil liability if his actions are influenced by malice, corruption, or cruelty.[5]

Distinct from the issues of military immunity and jurisdiction is the question of whether the alleged remarks present an actionable claim. After careful study the court has concluded they do not. The common law has long recognized that words of general abuse, regardless how crude, uncouth or vexatious, unless defamatory within themselves cannot serve as a basis for a defamation action in the absence of an allegation of special damages;[6] and, the mere fact the words

action for false imprisonment was maintainable against captain of the National Guard by a member of his company. As observed in 36 Am.Jur. § 119, p. 267: "* * * An officer will * * * be liable to the soldiers under him for acting in an illegal and unauthorized manner toward them. Actions of trespass for injuries to the person have been frequently brought and sustained in the common-law courts against naval as well as military commanders, by their subordinates, for acts done both at home and abroad, under pretense and color of naval and military discipline. * * * Likewise, an officer of militia issuing and executing a void warrant against a soldier of his company for a fine imposed on him, for neglecting to perform military duty, has been held liable in trespass for the arrest under it." Also, see 6 C.J.S., Army and Navy, § 36(a), p. 419, and, cases cited therein.

4. "* * * And we are of the opinion that it is quite as essential to the fearless and independent exercise of the authority conferred upon officers of the army and navy to enforce military discipline that they be free from the apprehension of vexatious suits grounded upon their official acts, as it is that a like immunity should be enjoyed by the judges of our civil courts. If it were otherwise, there would be every reason to fear that the discipline in the military establishment would be gravely affected." Wright v. White, 1941, 166 Or. 136, 110 P.2d 948, 953, 135 A.L.R. 1. The annotator in 20 A.L.R. 407, 409, in observing that the findings of a judge or person acting in a judicial capacity are privileged within the law of libel stated: "The same rule has been applied to military tribunals. Thus in Jekyll v. Moore (1806) 6 Esp. 63, 2 Bos. & P. N. R. 341, 127 Eng.Reprint, 658, it appeared that the plaintiff had preferred certain charges against a brother officer of the same regiment, the charges being tried by a general court-martial. The defendant, the president of the court-martial, in formulating an opinion, for delivery to the judge advocate, acquitting the officer charged, included a statement to the effect that the plaintiff, in producing malicious and groundless accusations, had been guilty of conduct most highly injurious to the good of the service, whereupon the action for a libel was brought. It was held that the words complained of formed part of the judgment of acquittal, and so no action could be maintained on it; for if the charges were absolutely without foundation it was no offense for the president of the court to state that the charge was groundless and malicious.". Read 6 C.J.S., Army and Navy, 36(b) dealing with immunity of members of courts-martial. Cf. 33 Am.Jur. § 177, pp. 170, 171.

5. As mentioned in Wilkes v. Dinsman, 1849, 7 How. 89, 48 U.S. 89, 123, 12 L.Ed. 618. "It is not to be lost sight of, however, and will be explained more fully hereafter, that, while the chief agent of the government, in so important a trust, when conducting with skill, fidelity, and energy, is to be protected under mere errors of judgment in the discharge of his duties, yet he is not to be shielded from responsibility if he acts out of his authority or jurisdiction, or inflicts private injury either from malice, cruelty, or any species of oppression, founded on considerations independent of public ends."

6. See cases cited in 37 A.L.R. 883, 885, § II.

are insulting and injure the feelings of the one at whom the remarks are directed does not of itself give rise to an action.[7] The remarks under consideration, although undeniably vulgar and offensive, do not fall within any of the various categories of publications recognized by the Oklahoma statute to be slanderous *per se*.[8] Subsection (3) of the pertinent enactment which makes utterances which tend "directly to injure him in respect to his office, profession, trade or business, * * * by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires" is the provision most nearly applicable. Yet, it seems clear beyond argument that the complained of remarks, under the circumstances established by the complaints' allegations, can only be deemed as words of abuse calculated to "annoy and irk", and, were not such as imputed to the plaintiffs' general disqualification touching peculiar abilities needed to follow their occupations.

■ Inasmuch as the plaintiffs have not alleged, and cannot prove, special

damages flowing from the remarks in question, defendant's motions to dismiss are hereby sustained.[9]

---

**7.** Distinguish where the words spoken are slanderous per se. In such instance there may be recovery for wounded sensibilities and substantial mental suffering, even though plaintiff has suffered no pecuniary loss or injury to reputation. See cases cited in 90 A.L.R. p. 1175, 1182.

**8.** 12 O.S.1951 § 1442 defines Slander as "a false and unprivileged publication, other than libel, which: 1. Charges any person with crime, or with having been indicted, convicted or punished for crime. 2. Imputes in him the present existence of an infectious, contagious or loathsome disease. 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit. 4. Imputes to him impotence or want of chastity; or, 5. Which, by natural consequences, causes actual damage." Jones v. Hill, 1944, 193 Okl. 653, 140 P.2d 294, 297, rules that to be slan-

derous per se the complained of remarks must fall within one of the subdivisions of § 1442.

**9.** The Oklahoma law is well settled that language when taken in its most usual and obvious sense merely is calculated to abuse, annoy and irk the subject thereof, but which is not libelous or slanderous per se, is not actionable in the absence of pleading and proof of special damage. Jones v. Hill, footnote 7, supra; Franklin v. World Pub. Co., 1938, 183 Okl. 507, 83 P.2d 401; Tulsa Tribune Co. v. Kight, 174 Okl. 359, 50 P.2d 350. Cf. Phoenix Printing Co. v. Robertson, 1921, 80 Okl. 191, 195 P. 487; and, Fite v. Oklahoma Pub. Co., 1930, 146 Okl. 150, 293 P. 1073, 1074 (1930) wherein the court in its syllabus said: "The fact that a publication may be unpleasant and annoy or irk the subject thereof, and may subject him to jest or banter, so as to affect his feelings, is not, standing alone, sufficient to make it libelous. In order to be libelous, it must tend to lower him in the opinion of men whose standard of opinion the court can properly recognize or tend to induce them to entertain an ill opinion of him."