**M. F. PATTERSON DENTAL SUPPLY COMPANY, Inc. and E. O. Blake, Appellants,**

**v.**

**Cullom S. WADLEY, Appellee.**

**No. 9672.**

United States Court of Appeals Tenth Circuit.

Sept. 18, 1968.

Rehearing Denied Nov. 4, 1968.

Edgar Fenton, of Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Okl., for appellants.

J. M. Sheehan, of McClelland, Collins, Sheehan, Bailey & Bailey, Oklahoma City, Okl., for appellee.

Before MURRAH, Chief Judge, and LEWIS and BREITENSTEIN, Circuit Judges.

MURRAH, Chief Judge.

This is an appeal from a judgment on a jury verdict awarding plaintiff-appellee Wadley damages on separate claims for libel and slander arising out of his discharge from employment in Oklahoma by defendant-appellant M. F. Patterson Dental Supply, Inc. The libel claim against the corporate employer alone was removed to federal court on admitted diversity of citizenship and requisite amount in controversy. Admittedly, the slander claim against the corporation and its Oklahoma City manager, E. O. Blake, was properly removed under 28 U.S.C. § 1441(c) as a separate and independent claim permissibly joined with the removable libel claim.

The pertinent and undisputed facts are that Wadley was employed by Patterson Dental Supply and its predecessor corporation as an Oklahoma salesman working out of the Oklahoma City store for more than twenty years, during which he rated near the top nationwide in sales among all of the company's supply salesmen. In 1965 Blake was appointed manager of the Oklahoma City store and friction immediately developed between Blake and Wadley. As a result, Blake conferred with Patterson, president of the company, and the two decided Patterson would discharge Wadley from employment. Patterson thereupon caused the following letter to be mailed over his signature to dentists upon whom Wadley called and dentists in the area upon whom he did not call:

"Over the years Mr. Cullom Wadley has contributed a great deal to this firm. He had made many friends in the dental profession, with our laboratory customers, and in our firm.

"Therefore, it is with a great deal of regret that we have reached the conclusion that, for the best interests of both our customers and our firm, we must release him from our employ. Believe me this action has not been taken without a great deal of thought and investigation, for we do not take lightly our responsibilities to not only you, but also our employees.

"Mr. T. E. (Tom) Warwick will take over most of the territory formerly covered by Mr. Wadley. I am sure you will find him reliable, dependable, and easy to do business with. However, actions speak louder than words, so give this young man a chance to prove how he can help you.

"With respect to the part of the territory which Mr. Warwick will not cover, most of which is in Oklahoma City, final arrangements have not been completely made, and an announcement will be forthcoming shortly."

No one seems to dispute the well established law, both generally and in Oklahoma, that in libel and slander actions the trial court must first determine whether a publication is libelous per se. If it is not libelous per se, the court has the further duty to determine as a matter of law whether the writing is susceptible of a defamatory meaning derivable from extrinsic facts and circumstances which must be specifically pleaded and supported by proof of special damages, i. e. libelous per quod.[1] If held legally susceptible, the court must also determine whether the occasion was privileged, and what items of harm, if any, suffered by the plaintiff as the result of the publication of the defamatory matter may be considered by the jury. The jury must then determine whether, under all of the existing circumstances, the recipients of the writing attributed to the language used the defamatory imputations set forth in the complaint; whether the defendant did or did not abuse the conditionally privileged occasion; whether such imputations were

truthful so as to make them unactionable, and, finally, the factum and amount of special damages. And see Restatement of the Law of Torts, Libel and Slander §§ 558, 559 Comment f, 613, 616, 619; 12 O.S. 1441; Kee v. Armstrong, Byrd and Co., 75 Okl. 84, 182 P. 494, 5 A.L.R. 1349; Phoenix Printing Co. v. Robertson, 80 Okl. 191, 195 P. 487; Toomey v. Jones, 124 Okl. 167, 254 P. 736, 51 A.L.R. 1066; Wimmer v. Oklahoma Publishing Co., 151 Okl. 123, 1 P.2d 671; Atlas Sewing Centers v. Nat'l Ass'n, etc., 10 Cir., 260 F.2d 803; Crozman v. Callahan, D.C., 136 F.Supp. 466; Louisiana Oil Corp. v. Renno, 173 Miss. 609, 157 So. 705; Anno. 98 A.L.R. 1301.

In his pre-trial order Judge Eubanks ruled that the communication was not libelous per se. But, the case was submitted to the jury under statutory definitive instructions, the necessary effect of which was to rule that while the writing is not of itself defamatory, it is "reasonably susceptible of a defamatory as well as an innocent meaning". Kee v. Armstrong Byrd and Co., supra, 182 P. 498.

■ The salient contention here is that the trial court erred in submitting the case to the jury on the theory that the letter was susceptible of a defamatory meaning because no such meaning was properly pleaded and proved, nor were requisite special damages shown. We cannot agree.

The complaint averred that the language of the letter was intended to mean that Wadley "was unfit to further represent the company, or to any longer enjoy a relationship of trust with his dentist customers, and further, by innuendo indicated that he was guilty of some unprecedented and unpardonable public or personal misconduct or activity * * * that he would be replaced by someone that was 'reliable, dependable and easy to do business with', further imputing that [Wadley] wasn't reliable, dependable and easy to do business with." It was further averred that the letter was so understood by the recipients and was intended to be "false, misleading,

defamatory, malicious, libelous * * * and did and does injure [Wadley] in his good name, reputation, and ability to earn a livelihood and * * * made it impossible for him to seek or gain employment with another dental supply house * * * and has completely alienated his relationship with all of his customers upon whom he has called and established good-will during the past 25 years * * *." As we read the letter in the context in which it was written, we readily agree with Judge Eubanks that it is susceptible of the defamatory imputations set forth in the complaint. A claim on which relief can be granted is thus stated.

■ It is further contended, however, that even if the letter is susceptible of a defamatory meaning, it is qualifiedly privileged since the company had a right to terminate Wadley's employment and to communicate that fact to its customers and prospective customers so long as such communication was not malicious.

The jury was instructed without objection to the effect that "A [qualified] 'privileged communication' is one made in good faith upon any subject matter in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty, and which contains matter which without the occasion upon which it is made would be defamatory and actionable. The privilege thus claimed by defendants is not absolute, but qualified, and must be made in good faith on the part of defendants. * * *" The court commendably instructed the jury in terms of this case to the effect that this was a privileged occasion since " * * * an employer has a right to terminate the employment of one employed as a salesman and to notify his customers and prospective customers of the change and identity of the salesman who is to succeed the one whose employment is terminated and to inform customers * * * of the reason for terminating the employment of such salesman, even though that reason may be injurious or damaging to the one discharged in his business

or profession, provided the same is done without malice or evil intent to injure or damage such a person, and for the purpose of protecting or promoting the employer's business." The jury was then comprehensively instructed as to the definition and proof of malice, leaving them with the admonition that "It is for you to say whether, under all the facts and circumstances in evidence in this case, actual malice on the part of the defendant, M. F. Patterson Dental Supply Company, Inc., toward [Wadley] has been shown. You are to judge from all the evidence whether such malice existed or not." We think this is an eminently correct and fair statement of the applicable rule of privilege, and the trial court properly submitted to the jury the issue of malice, the presence of which obviates the issue of privilege. See Nicholas v. Oklahoma City Mailer's Union, Okl., 285 P.2d 399; Bland v. Lawyer-Cuff Co., 72 Okl. 128, 178 P. 885; Atlas Sewing Centers v. Nat'l Ass'n, Etc., supra; Iverson v. Frandsen, 10 Cir., 237 F.2d 898; Restatement of the Law of Torts, Libel and Slander §§ 595, 599.

We think the issue of libel was properly submitted to the jury under correct instructions reading on the applicable law of the case.

This brings us to Wadley's slander claim. The slander claim restated all the essential averments of the libel claim, and went on to state, by way of slander, that Blake, as manager and agent of Patterson Dental Supply, advised one or more customers that "[Wadley] is more trouble than he is worth. He even caused our last manager to commit suicide". In support of such averment one witness, a former employee of the company, testified that while he was employed by Patterson Dental Supply, Blake told him that "Mr. Wadley run him [the last manager] crazy and caused him to commit

suicide". He was permitted to testify over a hearsay objection that "In the office and around the different dental offices * * *" he heard that Blake had made the same statement that "Wadley was the one that caused [the suicide]." The most that can be said for Blake's argument in defense of the slander claim is that even if the statements were made, as averred, and even though defamatory, they were unactionable for lack of requisite publication and were, moreover, qualifiedly privileged.

 To be actionable a defamatory statement must, of course, be published, i. e. it must be communicated to someone other than the person defamed. Blake and Patterson invoke the rule that defamatory words regarding a discharged employee spoken by a supervisory employee in the presence and hearing of a fellow employee do not constitute a publication. Although there appears to be some confusion among the various jurisdictions whether such defamation is unactionable for lack of publication or because it is a qualifiedly privileged occasion[2], Oklahoma apparently adopts the lack of publication concept. Thus, in Magnolia Petroleum Co. v. Davidson, 194 Okl. 115, 148 P.2d 468, a district superintendent, in the performance of his duties as an employee and agent of his corporate employer, made defamatory statements concerning a discharged employee in the presence and hearing of fellow employees of the corporation. The Oklahoma court saw no necessity to apply the qualified privilege rule because, in its view, the statements could not as a matter of law be considered a publication. The rationale is that when one corporate employee relates a defamatory statement to a fellow employee, the corporation is but communicating with itself. See Prins v. Holland-North America Mortgage Co., 107 Wash. 206, 181 P. 680, 5

2. Some jurisdictions apparently hold to the theory that a defamatory statement made by one employee to another in the course of business is a qualifiedly privileged occasion provided the statement is made without malice. See Louisiana Oil

Corp. v. Renno, supra; Anno. 98 A.L.R. 1301. Other jurisdictions seem to hold that such a communication is unactionable simply for lack of publication. Biggs v. Atlantic Coast Line R. Co., 5 Cir., 66 F.2d 87; Anno. 166 A.L.R. 114.

A.L.R. 451, cited in Magnolia Petroleum Co. v. Davidson, supra, 148 P.2d 471. It may be doubted whether the defamatory statement in our case was made in the performance of corporate business. But, we need not resolve this question since there was uncontroverted evidence that the defamation was communicated to other nonemployees "around the different dental offices". And, we agree with Judge Eubanks that this testimony was not hearsay. It is well settled that testimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement. See Creaghe v. Iowa Home Mutual Casualty Co., 10 Cir., 323 F.2d 981, and cases cited therein.

▮ The trial judge apparently ruled as a matter of law that the statements were published, and that Magnolia, therefore, had no controlling effect. He submitted the case to the jury on the theory of qualified privilege, telling them, in substance, that if they found from a preponderance of the evidence that Blake made the alleged statements; that the statements were actuated by malice; that they were false; and that Wadley sustained actual or compensatory damages as a result thereof, their verdict should be for Wadley; otherwise, their verdict should be for Blake and Patterson. We fully agree with the trial judge's instruction on the privilege issue.

Finally, Blake and Patterson devote one short paragraph of their brief to the court's instructions on the issue of damages. Wadley totally ignores the issue, but we cannot.

In his libel claim, Wadley sought $27,500 for loss of earnings due to alienation of his customers, $145,000 for general damage, and an additional $100,000 as exemplary damages for wilful, malicious and vicious publication of the letter. In his slander claim, Wadley sought $20,000 as reasonable damage to his good name, reputation and future earning ability in the dental supply business. He also sought an additional $25,000 as punitive or exemplary damages.

▮ It is settled law that one who is liable for a per se libel or slander is liable for both general and special damages. See Restatement of the Law of Torts, Libel and Slander §§ 621, 622. General damages are defined as all actual damages which naturally and necessarily flow from the wrongful act. Special damages, on the other hand, are actual damages which naturally, but not necessarily, flow from the wrongful act. See First National Bank of Mounds v. Cox, 82 Okl. 129, 198 P. 579; Restatement § 904.[3] After the trial judge ruled that the defamatory matter was not libelous per se, the case proceeded to trial only on the issue of libel per quod, for which, as we have seen, only special damages are recoverable upon requisite pleading and proof. This means, of course, that Wadley's claim for general damages fell with the trial court's determination that the matter was not libelous per se. See Chambers v. National Battery Co., D.C., 34 F.Supp. 834, 836; Barton v. Barnett, D.C., 226 F.Supp. 375; Dun & Bradstreet, Inc. v. Robinson, 233 Ark. 168, 345 S.W.2d 34; 53 C.J.S. Libel and Slander § 170, p. 271.

▮ Under the heading of "verdict", the jury was told that if they found from a preponderance of the evidence that Patterson's letter was false and written with malice, and Wadley sustained "actionable damages as a result thereof", the verdict should be for Wadley on the libel claim. The jury was further told that if they found from a preponderance of the evidence that Blake's statement was false and actuated by malice, and Wadley sustained "actual or compensatory damages as a direct result thereof", their verdict should be for Wadley on the slander claim.

3. The Restatement uses different language to express the same rule: "One who falsely and without a privilege to do so publishes a slander which, although not actionable per se, is the legal cause of special harm to the person defamed, is liable to him." § 575

Under the heading of "damages", the jury was instructed that damages recoverable in actions for libel and slander are of two kinds: (1) "actual or compensatory", i. e., damages actually suffered, and (2) exemplary or punitive damages. The jury was then told that if they found for Wadley, they might award him "such special or compensatory damages" which they found were sustained by Wadley as a direct and proximate result of the libel "insofar as the same may be computed in money", taking into consideration loss of earnings and reputation and damages to his profession as a salesman, if any, not to exceed "the amount sued for special damages $27,500 and general damages in the amount of $145,000." On the slander claim, the jury was told that if they found for Wadley, they might assess the amount which they found would fairly and reasonably compensate him for "general or compensatory" damages which they found from a preponderance of the evidence Wadley sustained as a direct and proximate result of the slander, taking into consideration loss of earnings and reputation, or damage to his profession as a salesman, not to exceed in any event the amount sued for general damages in the sum of $20,000. Then followed the conventional instruction on punitive or exemplary damages.

Counsel for Blake and Patterson objected to these instructions with the observation that since the court ruled the letter was not libelous per se, the "burden is on the plaintiff to prove specific special damages and that he is not entitled to establish general damages or punitive damages and that the distinction should be made in submitting the issue to the Jury and the instruction, so far as it relates to general and punitive damages, should not be submitted to the Jury and that special damages should be defined generally in the manner that we have indicated." Consistently with this objection the court was specifically re-quested to instruct the jury that the burden was on Wadley to prove that the letter was written with malicious intent to injure him and that he sustained special damages by reason thereof. The court was further requested to define special damages as those "which must be proven by specific evidence as to the time, cause and amount."

The trial court recognized the significance of the difference between special and general damages in the case, but seemed to think that his other instructions had adequately covered the matter. We do not think so. Rather, we think the requested instructions clearly stated the applicable law of the case as to recoverable damages.[4] The objections to the court's instruction went to the heart of an essential element of the case, the burden of pleading and proving special damages. As we read the court's instructions on damages, they fail to confine recovery to special damages, and, of equal importance, fail to define them at all.

In these circumstances the judgment of the court must be reversed.

■■■ One final matter deserves some comment. As we have seen, timely objections were made to the instructions on punitive damages, apparently on the theory that punitive damages are not recoverable for defamations not actionable per se. The verdict of the jury and the judgment thereon do not indicate that any punitive damages were allowed, and nothing further is said on the point in briefing or argument. We note the objection only because the question may recur in a retrial. We have found no case or comment to the effect that punitive damages are not recoverable in defamations per quod in the discretion of the jury based upon a specific finding of malice and special damages. And see Emde v. San Joaquin County, etc., Cal. App., 132 P.2d 279, 288; Crane v. New York World Telegram Corp., 308 N.Y.

4. As to what items of harm suffered by the plaintiff as a result of the publication may be considered by the jury in assessing special damages, see Comment under § 575 of the Restatement.

470, 126 N.E.2d 753, 52 A.L.R.2d 1169. In his instructions to the jury the trial judge proceeded on the premise that punitive damages were recoverable in such a situation. In the absence of authority to the contrary, we will accept his judgment as the applicable law of Oklahoma.

The case is reversed and remanded for a new trial in accordance with the views herein expressed.