**Michael O. TATUM, Plaintiff,**

v.

**PHILIP MORRIS INCORPORATED, a foreign corporation and d/b/a Philip Morris USA, Philip Morris Management Corp., a foreign corporation, and Ralph Rayburn, sued in his individual and representative capacities, Defendants.**

**No. CIV–90–1485–B.**

United States District Court, W.D. Oklahoma.

Dec. 10, 1992.

Frederick W. Southern, Jr. Oklahoma City, OK, for plaintiff.

Elizabeth Scott Wood, Robert W. Dace and M. Richard Mullins, McAfee & Taft, P.C., Oklahoma City, OK, for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

BOHANON, District Judge.

The court has before it for consideration the claims of Plaintiff, Michael O. Tatum, against Defendants, Philip Morris Incorporated ("Philip Morris"), Philip Morris Management Corp. ("Philip Morris Management") and Ralph Rayburn (collectively "Defendants" unless specified). Mr. Tatum has alleged claims against Defendants for (i) violation of Title VII, 42 U.S.C. § 2000e, *et seq.* for Philip Morris terminating his employment on the basis of his male gender; (ii) violation of Oklahoma public policy for Philip Morris terminating his employment on the basis of his male gender; (iii) tortious interference with contract, tortious interference with prospective employment, and tortious interference with prospective economic relations; (iv) defamation; (v) intentional infliction of emotional distress; and (vi) negligent supervision/respondeat superior against Philip Morris and Philip Morris Management.

In a trial held November 9 and 10, 1992, the court heard evidence on Mr. Tatum's claim under Title VII. The court holds and finds that Defendants are entitled to judgment on Mr. Tatum's Title VII claim for the reasons discussed below. Plaintiff's state law claims addressed by Defendants' Motion for Summary Judgment are dealt with under separate order.

## BACKGROUND FACTS

The following background facts are undisputed in this case:

Mr. Tatum became employed by Philip Morris as a sales representative in Philip Morris' Oklahoma City office in April, 1985. Mr. Tatum was an at-will employee who was hired by Rick Mitchum, a long-time friend, who was at that time a division manager for Philip Morris. In May, 1987, Mr. Rayburn became Mr. Tatum's supervisor and supervised Mr. Tatum until Mr. Tatum's termination from employment on March 7, 1990.

On Friday, February 23, 1990, Philip Morris hosted a reception at the Green's Country Club in Oklahoma City in connection with the Virginia Slims Tennis Tournament which it sponsors. Invited to the reception were Philip Morris' customers and employees. Mr. Tatum attended the reception. During the reception, a decorative bottle of wine which belonged to the Country Club was stolen from the reception room. Mr. Tatum had asked Mr. Rayburn during the course of the evening whether he could have the bottle of wine and was told he could not.

During the week of February 26, 1990, Mr. Rayburn and his supervisor, Alan Rexrode, questioned Mr. Tatum and others about the theft of the wine. Mr. Rexrode also contacted Philip Morris' Dallas Regional Office about the incident. Mr. Rexrode's supervisors in the Dallas Regional Office reviewed the incident and discussed the matter with Philip Morris' New York personnel office. On March 7, 1990, Mr. Rayburn, accompanied by Jimmy Lay, another manager in Philip Morris' Oklahoma City office, terminated Mr. Tatum's employment. Mr. Tatum was told that his employment was being terminated for his theft of the wine.

Mr. Tatum contends that he did not steal the wine. Mr. Tatum contends that Defendants fabricated the story of his stealing the wine as a pretext to unlawfully discriminate against him in order to terminate his employment on the basis of his male gender. Mr. Tatum contends that Defendants' actions violated Title VII.

Defendants contend that Mr. Tatum was terminated only for his dishonesty for stealing the bottle of wine and for his insubordination for stealing the bottle of wine after being told by Mr. Rayburn and Mr. Lay that he could not have the bottle of wine. Defendants deny that Mr. Rayburn made the statements attributed to him and contend that Philip Morris Management is not a proper party to this case because none of its employees took any part in the decision to terminate Mr. Tatum's employment.

## FINDINGS OF FACT

1. Mr. Tatum attempted at trial to establish that Philip Morris and Mr. Rayburn prefer to hire women and that Mr. Rayburn was instructed by his supervisors, Mr. Mitchum and Mr. Rexrode, to hire women. Mr. Tatum sought to establish this alleged policy by introducing Mr. Rayburn's past performance evaluations as part of Plaintiff's Exhibit No. 32 and contended that the "Affirmative Action" portion of the performance evaluations reflected this alleged policy. Mr. Rayburn testified during Mr. Tatum's case-in-chief that he has never been instructed to hire a female instead of a male but instead has always been instructed by his superiors to hire the most qualified applicant for any position. James Paddock, a section sales director in Philip Morris' Dallas Regional Office and Mr. Rayburn's indirect supervisor during the time Mr. Rayburn supervised Mr. Tatum, testified during Mr. Tatum's case-in-chief that he has always instructed his subordinates, including Mr. Rayburn, to hire the most qualified applicant and has not instructed them to hire females in preference to males. During Defendants' case-in-chief, Mr. Rexrode and Mr. Mitchum, Mr. Rayburn's direct supervisors during the time he supervised Mr. Tatum, also testified that they had instructed Mr. Rayburn to only hire the most qualified applicant and that had they noticed Mr. Rayburn giving preference to females in hiring or had they noticed Mr. Rayburn favoring females in any way, they would have disciplined him. The court finds the testimony of Mr. Rayburn, Mr. Rexrode, Mr. Mitchum and Mr. Paddock to be credible and finds that Philip Morris and Mr. Rayburn did not have a policy to hire females instead of males or to favor females over males in any situation and that Philip Morris and Mr. Rayburn sought to hire the most qualified applicant for job openings, regardless of whether the applicants were male or female.

2. The court finds that Mr. Rayburn's performance evaluations show only that Philip Morris had a policy for its hiring managers to establish and maintain effective contacts and relations with employment agencies that would result in the hiring manager being able to obtain a pool of qualified applicants, including women and other minorities, when positions became available. Far from being discriminatory, this policy shows that Philip Morris desires to give equal employment opportunities to all. Furthermore, as a federal contractor, under executive order 11246, Philip Morris is required to give equal employment opportunities to all. Based on the testimony of Mr. Paddock, Mr. Mitchum, Mr. Rexrode and Mr. Rayburn, the court finds that even such statements in the performance evaluations as "... we should be looking to fill vacancies with females or minorities" are not indicative that females were to be given preference in hiring or that Mr. Mitchum and Mr. Rexrode had instructed Mr. Rayburn to hire females. Rather, such statements are part and parcel to the stated policy of establishing and maintaining effective contacts and relations with employment agencies to obtain a pool of qualified applicants and are only instructions to Mr. Rayburn to be sure to consider all applicants equally in the hiring process. This policy and Mr. Mitchum's and Mr. Rexrode's testimony is reflected and supported in another category of Mr. Rayburn's performance evaluations entitled "Responsibility: Recruiting and Selecting." In that category, Mr. Rayburn was praised for his ability to effectively use various recruiting sources and, as stated in Mr. Rayburn's performance evaluation dated November 27, 1989, his ability to hire the best people to work for the company.

> You have made three new hires in the past year (Tracy Forsythe, Gary Cates, and Ron Spears). Based on the performance of each, all were good hire decisions. You always have an eye toward recruiting the best people to work for PM. Screening and interviewing practices are effective.

3. The only other "evidence" that Mr. Tatum submitted concerning Philip Morris' and Mr. Rayburn's alleged hiring practices that even merits discussion is the testimony of Raul Sanchez and Sam Azhari. Mr. Sanchez testified that Mr. Rayburn told

him that he could not hire Mr. Sanchez for positions because he had to hire females to meet a quota. Mr. Rayburn's hiring practices are not at issue in this case, however. The only issue before the court is whether Plaintiff was terminated because of his male gender. Mr. Sanchez' testimony is therefore irrelevant and unable to be relied on by the court.

4. Mr. Azhari is a customer of Philip Morris. Mr. Azhari testified that on an occasion when Mr. Rayburn and Ms. Ramona Ayers visited his store shortly after Mr. Tatum's termination, Mr. Rayburn allegedly told him that women make better sales representatives than men and that Mr. Rayburn then made derogatory remarks to him about women. The court finds that Mr. Azhari's testimony is not credible. The allegations that Mr. Rayburn said that women make better sales representatives than men and then made derogatory remarks about women are inconsistent. Further, the court finds credible the testimony of Mr. Rayburn and Ramona Ayers who both testified that Mr. Rayburn never made any such statements. Mr. Rayburn and Ms. Ayers also testified that on the two occasions they visited Mr. Azhari's store together they were never apart during the time they were at Mr. Azhari's store. Mr. Azhari testified that Mr. Rayburn made the alleged statements when Ms. Ayers went outside. The court believes that Mr. Azhari's testimony was influenced by the fact that Ms. Ayers, a Philip Morris sales representative, caught Mr. Azhari's brother stealing $1,500 worth of cigarette coupons from her during a call she made on Mr. Azhari's store. Even if Mr. Rayburn made the statement that women make better sales representatives than men, which the court does not believe, such a statement has nothing to do either with Mr. Tatum's performance as a sales representative as compared with the job performance of female sales representatives or with the reason for Mr. Tatum's termination from employment.

5. The court finds that Mr. Tatum presented no credible evidence at trial that Philip Morris favors women over men in hiring situations. This is particularly true when Mr. Rayburn's hiring record since he became a manager with hiring authority in Oklahoma is examined. Since that time, Mr. Rayburn has hired seven full-time employees. Four of the employees have been men, and three of the employees have been women. Mr. Rayburn has terminated three males other than Mr. Tatum, all of whom the court finds were terminated for cause. The fourth male that Mr. Rayburn has terminated was Mr. Tatum who, as will be discussed below, was also terminated for cause. To replace the four terminated males, Mr. Rayburn hired two men and two women. This is hardly evidence that Mr. Rayburn prefers to hire women.

6. The issue in this case is not, however, whether Philip Morris and Mr. Rayburn prefer to hire women instead of men. Although Mr. Tatum has attempted to frame the issue in that light, the issue in this case is whether Mr. Tatum has presented any evidence that his employment was *terminated* because he is a male and whether Defendants intentionally discriminated against him because he is a male. The court finds that Mr. Tatum has not presented any evidence that Philip Morris and Mr. Rayburn have ever terminated a male employee's employment in order to hire a female and has not presented any evidence that his employment was terminated so that a female could be hired. The court finds that there is no evidence to support Mr. Tatum's claim that his employment was terminated because of his male gender.

7. What the evidence does show in this case, and the court believes the evidence to be clear and convincing, is that Mr. Tatum stole the bottle of wine from the Greens Country Club on February 23, 1990, and that Mr. Tatum's employment was terminated only because he stole the bottle of wine and because he stole the bottle of wine after being instructed by two supervisors not to take it. The evidence establishes that Mr. Tatum was both dishonest and insubordinate.

8. Defendants' evidence as to Mr. Tatum's theft of the bottle of wine consisted of the testimony of Vera Kirby, Linda Ray-

burn, Lorraine Smoot, and Tracy Forsythe. The Court finds that the testimony of these witnesses was credible and, in fact, the court believes every word they said. Ms. Kirby is a sales representative for Philip Morris and has known Mr. Tatum for many years. She was present at the reception on February 23, 1990, and testified that Mr. Tatum called her name and showed her the bottle of wine in his possession, wrapped in t-shirts. Mrs. Rayburn, Ralph Rayburn's wife, testified that she saw Mr. Tatum standing by the guest table at the reception with the wine wrapped in t-shirts and observed Mr. Tatum leave the reception with the bottle of wine in his possession. Ms. Forsythe, another Philip Morris sales representative, also testified that she observed Mr. Tatum leave the reception with the bottle of wine wrapped in t-shirts. Lorraine Smoot, also a sales representative for Philip Morris, testified that she saw Mr. Tatum take the bottle of wine and place it under the guest table, stand up with the bottle wrapped in t-shirts, and later exit the reception with the bottle wrapped in t-shirts. The court finds that the testimony presented by Ms. Kirby, Mrs. Rayburn, Ms. Forsythe, and Ms. Smoot establishes that Mr. Tatum did in fact steal the bottle of wine. The court makes a specific finding that Mr. Tatum did steal the bottle of wine from the reception at the Greens Country Club on February 23, 1990.

9. Plaintiff contends that Ms. Kirby, Mrs. Rayburn, Ms. Forsythe, and Ms. Smoot made up the incident because they are related to Mr. Rayburn, and that Ms. Kirby, Ms. Forsythe and Ms. Smoot are lying about the incident to save their jobs. The court finds that there is no basis for these contentions. It is the court's understanding that Ms. Smoot and Ms. Forsythe are sisters, and that their brother is married to Mrs. Rayburn's sister. Ms. Smoot and Ms. Forsythe are not related to Mr. and Mrs. Rayburn. There is no evidence that the story about Mr. Tatum's stealing the bottle of wine was fabricated. The

court finds it inconceivable under these circumstances that Ms. Kirby, Ms. Forsythe and Ms. Smoot would lie about a co-worker to save their jobs. To the contrary, the court has found that Mr. Tatum stole the wine and that the witnesses who saw him steal it are telling the truth.

10. After Mr. Rayburn was informed by his wife, on Sunday, February 25, 1990, about the incident, the next working day Mr. Rayburn advised Mr. Rexrode that Mr. Tatum had been seen stealing the wine. Mr. Rexrode reported the incident to his supervisor, Mr. Paddock, who instructed Mr. Rexrode to investigate the matter. Mr. Paddock was kept advised by Mr. Rexrode about the status of the investigation. Mr. Lay, who had been asked by Mr. Tatum whether he could take the wine, and the eyewitnesses to Mr. Tatum's act of theft were consulted by Mr. Rayburn and Mr. Rexrode, as was Mr. Tatum. Mr. Paddock discussed the matter on several occasions with his supervisor, Charles Finch, Regional Vice President of Sales, and consulted on several occasions with Rosemary Milton, Regional Employee Relations Manager. Ms. Milton consulted with Philip Morris' New York City personnel office to ensure that Mr. Tatum's conduct warranted termination and that termination was consistent with company policy and past company actions, and obtained the necessary approvals for terminating Mr. Tatum's employment. Mr. Paddock, before a final decision was reached to terminate Mr. Tatum's employment, instructed Mr. Rayburn and Mr. Rexrode to obtain written statements from Ms. Forsythe, Ms. Smoot and Mrs. Rayburn.[1] The court finds that a reasonable investigation into Mr. Tatum's theft of the bottle of wine was conducted and that it was designed to ensure that Mr. Tatum was treated fairly.

11. The court finds that Mr. Tatum's employment was terminated only because of his dishonesty for stealing the bottle of wine and for his insubordination for steal-

---

1. Mrs. Rayburn's written statement was not obtained until one day after Mr. Tatum's termination because Mr. Rayburn, Mr. Rexrode, Mr. Paddock, Ms. Smoot, and Ms. Forsythe were present at a meeting in Tulsa when Ms. Smoot's and Ms. Forsythe's statements were obtained, while Mrs. Rayburn was in Oklahoma City.

ing the bottle of wine after being told by Mr. Rayburn and Mr. Lay that he could not take the bottle of wine. There has been no evidence presented to the court that there was any other reason for Mr. Tatum's termination from employment.

12. The court finds that Mr. Tatum's employment was terminated for cause because he stole the bottle of wine and did so after being told by two supervisors not to take it. The court finds that Mr. Tatum was both dishonest and insubordinate.

13. On rebuttal, Mr. Tatum presented two witnesses, Kathy Vernon and Delores Welch, who testified that they saw Plaintiff after he left the reception and that he did not have a bottle of wine. Mr. Tatum also testified that he did not take the bottle of wine. After observing these witnesses, the court is of the opinion that no credibility can be attached to their testimony. Ms. Vernon is a disgruntled former employee of Philip Morris who is contemplating litigation against the company, and the court has serious doubts that Ms. Vernon was even at the reception as she contends. Several persons who attended the reception testified that they did not see Ms. Vernon at the reception. Ms. Vernon's testimony about the reception, including the weather at that time, is markedly different from that of Defendants' witnesses. Ms. Welch is also not a credible witness. Her testimony about her attendance at the Greens Country club that night is not credible. Mr. Tatum's testimony that he did not steal the bottle of wine is not believed by the court because the court gives great weight to and believes the testimony of Ms. Kirby, Ms. Rayburn, Ms. Forsythe and Ms. Smoot.

14. The court finds that no employee of Philip Morris Management was in any manner involved in the decision to terminate Mr. Tatum's employment. Philip Morris Management is not a proper party to this case, and Plaintiff should not have sued Philip Morris Management.

15. The court finds that Philip Morris and Mr. Rayburn reasonably believed that Mr. Tatum stole the bottle of wine and that they terminated his employment for that reason and not for discriminatory reasons.

16. The court finds that Mr. Tatum has presented no credible evidence to support his claim that his employment was terminated because of his male gender. Mr. Tatum's evidence is so weak that the court is of the opinion that this case should never have been filed. Mr. Tatum stole the bottle of wine, was dishonest, was insubordinate, and was justifiably terminated, yet he still filed a claim alleging that he was unlawfully discriminated against on the basis of his gender. There is no basis in fact for such a claim and the filing of such a claim is inconceivable in light of the overwhelming evidence against it.

## CONCLUSIONS OF LAW

1. Where, as here, a plaintiff can present no direct evidence that the defendant employer intentionally discriminated against him because of his male gender, he must follow the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), for evaluation of Title VII disparate treatment claims. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of intentional discrimination. If plaintiff carries his initial burden, the burden shifts to defendants to articulate some legitimate non-discriminatory reason for the challenged workplace decision. If the defendant carries this burden of production, the plaintiff has an opportunity to prove that the legitimate reasons defendants offered were merely a pretext for discrimination. The plaintiff has at all times the burden to establish his case by a preponderance of the evidence.

2. Under *McDonnell Douglas*, to establish a prima facie case of discriminatory discharge, a plaintiff must normally prove that (i) he belongs to a protected class; (ii) he was qualified for his job; (iii) he was terminated despite his qualifications; and (iv) after he was terminated, his job remained open and the employer sought applicants whose qualifications were no better than plaintiff's. *Trujillo v. Grand Junction Regional Center*, 928 F.2d 973, 977 (10th Cir.1991). Where a member of a historically favored group is alleging re-

verse discrimination as Mr. Tatum is here, it is appropriate to adjust the prima facie case. Mr. Tatum must, in lieu of showing that he belongs to a protected class, establish background circumstances that support an inference that Philip Morris and Mr. Rayburn are those unusual employers who discriminate against the majority. Mr. Tatum was required to allege and produce evidence to support specific facts sufficient to support a reasonable inference that, but for Mr. Tatum's male gender, he would not have been terminated. *Notari v. Denver Water Dept.*, 971 F.2d 585, 589–90 (10th Cir.1992); *Livingston v. Roadway Express Inc.*, 802 F.2d 1250 (10th Cir.1986).

3. The court is of the opinion that Mr. Tatum did not establish a prima facie case of intentional discrimination. Mr. Tatum, during his case-in-chief, presented no evidence that he was terminated because of his male gender. At best, all Mr. Tatum did was to introduce evidence concerning Philip Morris' policy of requiring a hiring manager to establish and maintain effective contacts and relations with employment agencies that would result in the hiring manager being able to obtain a pool of qualified applicants, including women and other minorities. Further, the evidence presented during Mr. Tatum's case-in-chief showed that every male whose employment was terminated by Mr. Rayburn was terminated for cause and for a non-discriminatory reason. Mr. Tatum wholly failed to establish any background circumstances showing that Philip Morris and Mr. Rayburn are the unusual employers who discriminate against the majority and therefore did not meet his burden of establishing a prima facie case. However, because the court proceeded to hear all the evidence both sides had to present, whether Mr. Tatum established his prima facie case is not germane.

4. Pursuant to the *McDonnell Douglas* method, Defendants established a legitimate, non-discriminatory reason for their business decision to terminate Mr. Tatum's employment. Mr. Tatum was terminated only because of his dishonesty for stealing the wine and for his insubordina-

tion for stealing the wine after being told by two superiors that he could not take the wine. Mr. Tatum's dishonesty and insubordination constituted violations of company policy and justified his termination from employment under Philip Morris' company policy.

5. While Mr. Tatum may generally dispute whether his theft of the wine and his insubordination should have been grounds for his termination from employment, such a dispute does not provide a sufficient basis for an inference or finding that Defendants discriminated against Mr. Tatum on the basis of his male gender. The finder of fact is not to second guess an employer's business judgment that a plaintiff's conduct warranted his termination from employment. The fact finder does not sit as a super personnel department that can re-examine an employer's business decisions, and a plaintiff must do more than challenge the business judgment of his former employer. *Fallis v. Kerr–McGee Corp.*, 944 F.2d 743, 747 (10th Cir. 1991); *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988). As discussed, even if Plaintiff did not steal the bottle of wine, which the court believes that he did and has so found, the court has also found that Philip Morris and Mr. Rayburn were reasonable in their belief that Mr. Tatum stole the bottle of wine and were therefore justified in terminating his employment pursuant to company policy.

6. Under *McDonnell Douglas*, once a defendant articulates a legitimate, non-discriminatory reason for its business decision, the plaintiff is to be given the opportunity to show that the articulated, non-discriminatory business reason is a pretext for discrimination. The court holds and finds that, after Defendants presented their evidence, Mr. Tatum presented no credible evidence that Philip Morris' decision to terminate Mr. Tatum's employment because of his dishonesty and his insubordination was a pretext for unlawful discrimination. The court holds and finds that the only reasons for Mr. Tatum's termination from employment were his theft of the bottle of wine and his insubordination and

holds and finds that Mr. Tatum's male gender played no part in the decision to terminate his employment.

7. Mr. Tatum has failed to establish by a preponderance of the evidence that his employment was terminated because of his male gender and that Defendants intentionally discriminated against him. There is no basis in law for Mr. Tatum's claim that Defendants violated Title VII. Like the factual basis for his Title VII claim, the legal basis for Mr. Tatum's claim that Defendants violated Title VII is so weak that it is inconceivable that Mr. Tatum filed a Title VII against Defendants.

### CONCLUSION

Defendants are entitled to judgment in their favor on Mr. Tatum's claim that they violated Title VII by terminating Mr. Tatum's employment on the basis of his male gender. There is no credible evidence that Mr. Tatum was terminated due to his male gender. The evidence against such a claim is so overwhelming that Mr. Tatum should not have filed his Title VII claim. There is no basis in either fact or law for Mr. Tatum's claim that he was terminated because of his male gender.

An appropriate judgment will accordingly be filed herein.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This matter comes before the court on Defendants, Philip Morris Incorporated ("Philip Morris"), Philip Morris Management Corporation ("Philip Morris Management") and Ralph Rayburn's (collectively "Defendants" unless specified) motion for summary judgment filed on October 7, 1992. Plaintiff's response was filed on October 22, 1992, and Defendants' reply on October 29, 1992. The court heard oral argument on the motion on November 4, 1992, at which time the court took the motion under advisement. On November 9–10, 1992, Plaintiff tried his Title VII claim, 42 U.S.C. § 2000e *et seq*, to the court, thus implicitly denying Defendants' motion as to that claim. During the course of the non-jury trial, Defendants asserted and twice reasserted their motion for summary judgment on Plaintiff's pendent claims. After further review of the motion, supporting brief and attached exhibits, response thereto with attached exhibits, and Defendants' reply with attached exhibits, the court determines that Defendants' motion for summary judgment on Plaintiff's pendent state law claims should be granted. The court wishes to make clear, however, that in ruling on Defendants' motion for summary judgment, it has not relied in any way on the evidence presented in the non-jury trial. The court's grant of summary judgment is based solely on the evidence presented by the motion, briefs and exhibits presented by the parties to the motion.

#### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). On a summary judgment motion, the court is required to pierce the pleadings and evaluate the actual proof to determine whether summary judgment is appropriate. *Id.* at Advisory Committee Notes. In determining whether a genuine issue of material fact exists, all facts and inferences should be viewed in the light most favorable to the nonmoving party. *Burnette v. Dow Chemical Co.*, 849 F.2d 1269 (10th Cir.1988). However, on a defendant's motion for summary judgment:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmov-

**1464**

ing party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The Supreme Court defined the evidentiary burdens in summary judgment cases in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the defendant meets the *Celotex* requirement, the burdens shifts to plaintiff to show that there is a *"genuine* issue of *material* fact." *Id.* at 248, 106 S.Ct. at 2510 (emphasis in original). A dispute is "genuine" "if a reasonable jury could return a verdict for the nonmoving party." *Id.* The Court held that after plaintiff responds to the motion, the Trial Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. at 2512. "The mere existence of a scintilla of evidence in support of the [plaintiff's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [plaintiff]." *Id.* at 252, 106 S.Ct. at 2512.

These cases furnished the basis for the Tenth Circuit's statement in *Burnette v. Dow Chem. Co.,* 849 F.2d 1269 (10th Cir. 1988), that although the facts and inferences must be viewed in plaintiff's favor on defendant's motion, "even under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Id.* at 1273. These cases cast a heavy burden on Plaintiff in this case since the undisputed material facts show that Defendants are entitled to judgment.

Plaintiff's remaining state law causes of action allege that: (1) because Defendants terminated his employment on the basis of reverse discrimination, they violated the public policy of the State of Oklahoma; (2) Defendants tortiously interfered with contractual relations Plaintiff had with prospective employers, prospective employment, and with Plaintiff's prospective economic relations; (3) Defendants defamed Plaintiff; (4) Defendants intentionally inflicted emotional distress on Plaintiff; and (5) Philip Morris and Philip Morris Management negligently retained Defendant Rayburn.

### Undisputed Facts

Plaintiff was employed by Philip Morris as a sales representative in the Oklahoma City area from April, 1985, until March 7, 1990. From May, 1987, until March 7, 1990, Plaintiff was supervised by Defendant Rayburn. Plaintiff's employment was terminated on March 7, 1990, the reason for which is the subject matter of this lawsuit. Plaintiff alleges that his employment was terminated because he was a male. Defendants contend that Plaintiff was fired for stealing a bottle of wine and for insubordination.

It is undisputed that Plaintiff attended a reception sponsored by Philip Morris at the Greens Country Club in Oklahoma City on Friday, February 23, 1990. What occurred at the reception is vigorously disputed by the parties. However, it is undisputed that throughout the course of the evening, Plaintiff asked Defendant Rayburn whether he could take a decorative bottle of wine as a souvenir. Rayburn told him that he should not. It is also undisputed that Defendant Rayburn's wife informed him on February 25, 1990, that she and two other employees had seen Plaintiff take a bottle of wine from the country club. At Rayburn's supervisor's request, an investigation was launched into whether Plaintiff had actually stolen the wine. Defendant Rayburn and his supervisor, Alan Rexrode, questioned Plaintiff about the incident. Plaintiff denied that he had taken the bottle of wine. Mr. Rexrode then questioned the two employees about what they had seen the evening of the reception. It was subsequently decided by Defendant Rayburn's supervisor and a representative of the Dallas regional office, Mr. James Paddock, that Plaintiff's employment be terminated based on their belief that Plaintiff had taken the bottle of wine. Written statements were then taken from Rayburn's wife and the two employees.

Mr. Rayburn did not at the time Plaintiff was terminated and does not at the present possess the authority to terminate the employment of any employee without the approval of his supervisor, Philip Morris representatives in the Dallas regional office, and Philip Morris' New York personnel office. Defendant Rayburn did not terminate any employees, male or female, while he was Division Manager in Dallas.

Since he has been Division Manager in Oklahoma City, he has terminated four male employees, including Plaintiff. John Balentine was terminated for unexcused absences from work. Bobby Blanton was terminated because he falsified company records. Smith Steigleder's employment was terminated for shortages in his consignment fund. Plaintiff was the fourth male terminated by Defendant Rayburn on direction from his superiors.

When Mr. Balentine's employment was terminated, he was replaced by Mr. Blanton, a male. Mr. Blanton was replaced by Gary Cates, also a male. Mr. Cates was transferred to another territory still under the supervision of Defendant Rayburn. He was replaced by Ron Spears, another male. Upon Mr. Steigleder's termination, he was replaced by a female, Tracy Forsythe. Plaintiff was also replaced by a female, Ramona Ayers. Mr. Rayburn has hired in Oklahoma four full-time male employees and three full-time female employees. Plaintiff fails to allege or provide any evidence on the job qualifications of either Ms. Forsythe or Ms. Ayers.

In addition, Defendant Rayburn currently supervises a sales work force consisting of four females and three males. However, prior to Plaintiff's termination and replacement by Ms. Ayers, Rayburn supervised three females and four males, a ratio which was identical to Philip Morris' national sales force.

Plaintiff alleges that he was denied employment after his termination by Philip Morris because of statements allegedly made by Defendant Rayburn to three prospective employers, Dyana Azarpour, Richard Phillips and Sam Azhari. Plaintiff fails to identify any other prospective employers who refused to provide employment for Plaintiff because of statements allegedly made by Defendant Rayburn.

Ms. Azarpour testified that she failed to hire Plaintiff because (1) she did not want him to be uncomfortable dealing with the situation of a Philip Morris representative calling on her store; and, (2) she could not pay him the amount of money he needed. Ms. Azarpour also testified that any statement made by Defendant Rayburn did not affect her employment decision.

Plaintiff did not seek employment with Mr. Phillips and, even if he had, Mr. Phillips had no job opening at the time. Mr. Phillips testified that he holds Plaintiff in high regard, and any stories going around about the reason for Plaintiff's termination would not have affected any hiring decision.

Mr. Azhari testified that he heard about Plaintiff's termination from his brother, Harry Azhari, who had heard it from the RJR sales representative, Linda. Defendant Rayburn then confirmed to Mr. Azhari that Plaintiff had been terminated for stealing a vase at a meeting in Louisiana. The rumor that Mr. Azhari heard affected his decision to not hire Plaintiff, and he would not have hired Plaintiff even if Defendant Rayburn had not "confirmed" the rumor.

Both Defendant Rayburn and Plaintiff testified in deposition about a conversation Mr. Rayburn had with Mr. Lamun and Mr. Wolfe at Consolidated Wholesale, one of Plaintiff's accounts. During the course of the meeting, Mr. Lamun asked Mr. Rayburn if it was true that Plaintiff had been terminated for taking a bottle of wine. Mr. Rayburn confirmed that Plaintiff had been terminated in regards to the wine incident, but that Mr. Rayburn did not believe that Plaintiff had actually stolen the bottle of wine.

Philip Morris and Philip Morris Management are separate both subsidiaries of the same holding company, but they are separate companies. No one employed by Philip Morris Management participated in the decision to terminate Plaintiff's employment. The only connection Philip Morris

Management has to this case is the inquiry made by Plaintiff after his termination to which a representative of Philip Morris Management responded indicating that Philip Morris Management would investigate the legality of Plaintiff's termination.

*Plaintiff's wrongful discharge claim*

■ To prevail on his wrongful discharge claim, Plaintiff must produce evidence showing that Defendants discriminated against him. The court finds that Mr. Tatum has failed to produce any evidence that gives rise to a genuine issue of material fact on his public policy claim.

The evidence Plaintiff relies on to show gender-based discrimination is the following: (1) Mr. Rayburn hires and has a larger contingent of females than males; (2) the gender composition of Mr. Rayburn's division is disproportionate to that of Philip Morris' national sales force; (3) Mr. Rayburn's division in Texas was known as the "North Hollywood Division" because of its "higher female compliment"; (4) Philip Morris advertises for only part-time positions rather than full-time positions; (5) Mr. Rayburn has systematically terminated male employees in Texas and Oklahoma and replaced them with lesser qualified females; (6) Mr. Rayburn allegedly told Mr. Azhari that he prefers female sales representatives and makes derogatory remarks about women; (7) Mr. Rayburn stated to Mr. Azhari that women make better sales representatives than men; (8) Ms. Kathy Vernon believes that Mr. Rayburn prefers young and attractive females to males; (9) Ms. Dyana Azarpour believes that Mr. Rayburn wanted his "little girls" as sales representatives; and (10) Mr. Tatum did not take the bottle of wine.

■ Viewing Plaintiff's evidence in a light most favorable to Plaintiff, as a court must on a motion for summary judgment, the court finds that the evidence submitted by Plaintiff is insufficient to raise an issue of disputed material fact about whether Mr. Tatum's employment was terminated because of his male gender. Specifically, the undisputed facts show: (1) Mr. Rayburn has hired in Oklahoma four full-time male employees and three full-time female employees; (2) until Plaintiff's termination, Defendant Rayburn's division was comprised of four male employees and three female employees, a number consistent with the national sales force. After Plaintiff's termination and Ms. Ayers' hiring, the division consisted of three males and four females; (3) Mr. Rayburn did not hire the individuals who comprised his "North Hollywood Division", and it is undisputed that they were assigned to him; (4) whether Philip Morris advertises for positions is immaterial to Plaintiff's claim that he was terminated for his male gender; (5) it is undisputed in this case that Defendant Rayburn did not terminate any employees while he was employed by Philip Morris in Texas, Plaintiff has admitted that he knows nothing of Mr. Rayburn's record of terminating employees in Texas, the only male employees terminated by Mr. Rayburn in Oklahoma were terminated for cause, and two of the four male employees whom Mr. Rayburn terminated were replaced by males; (6) the allegation that Mr. Rayburn prefers female sales representatives but at the same time makes derogatory comments about women is simply inconsistent and is not evidence that Plaintiff's employment was terminated because he is a male; (7) whether or not Defendant Rayburn stated that women make better sales representatives than men is immaterial because such a statement, even if made, has nothing to do with Plaintiff's performance as a sales representative as compared with the performance of female sales representatives, and at best can be considered only a generalization. Also, Mr. Rayburn's hiring record of four full-time male employees and three full-time female employees belies a preference for female sales representatives; (8) the allegation that Mr. Rayburn prefers young and attractive females is not a fact, but rather is conjecture on the part of Ms. Vernon. According to Ms. Vernon's deposition testimony, she believes that Mr. Rayburn prefers young and attractive *people,* not *females,* and admits that she does not know what attributes or qualifications Mr. Rayburn looks for in a sales representative; (9) the evidence that Mr. Rayburn

wanted his "little girls" as sales representatives cannot support Plaintiff's claim that he was terminated because of his male gender. Plaintiff attributes the foregoing statement to Ms. Azarpour, and any such statement is only Ms. Azarpour's conjecture. Ms. Azarpour is not an employee of Philip Morris, she provided no basis for her opinion other than she "just knows it", and this allegation is again belied by the fact that Mr. Rayburn has hired more males than females for full-time positions in Oklahoma, and Plaintiff admits, Mr. Rayburn has terminated males only for cause; (10) while Plaintiff states that he did not take the bottle of wine, he has provided no evidence that representatives of Philip Morris did not believe that he stole the bottle of wine at the time he was terminated and has produced no evidence that his termination was for any acts other than his acts of theft and insubordination.

Defendants, on the other hand, have produced specific evidence which Plaintiff failed to dispute that his employment was terminated only because of his dishonesty for stealing the bottle of wine and for insubordination. This evidence was presented in the form of the affidavits of Mr. Rayburn and Mr. Paddock. In the affidavits, they stated that the only reasons for Plaintiff's termination were his dishonesty and insubordination. Defendant Rayburn and Mr. Paddock both stated in their affidavits that the fact that Plaintiff is a male was not considered in the decision to terminate Plaintiff's employment and his male gender had nothing to do with the reasons for his termination.

In regard to evidence that could be indicative of discrimination, past terminations, Plaintiff admits that, other than himself, no male employee has been terminated by Mr. Rayburn for any reason other than for cause. No inference of discrimination can be drawn from prior terminations if, as the court finds, all of the past terminations were for cause. In fact, two of the males that were terminated, Bobby Blanton and John Balentine, signed affidavits which were presented with Defendants' motion for summary judgment stating that they had been terminated for cause, that their

termination was justified, and that they did not believe that there was any discrimination in their terminations. Also, if Mr. Rayburn were terminating men in order to replace them with lesser qualified women, as Plaintiff alleges, it would seem that all of the men would have been replaced by women. However, as Plaintiff admits, two of the four terminated males were replaced by males and two were replaced by females. Plaintiff also admits that he knows nothing about the qualifications of the two women who were hired to replace the terminated males.

The court finds that there is no genuine issue as to any material fact that precludes Defendants from obtaining summary judgment on Plaintiff's claim that Defendants violated the public policy of Oklahoma. The court finds that the undisputed evidence presented to the court establishes that Plaintiff's employment was terminated for dishonesty and insubordination and that his male gender played no part in the decision to terminate his employment. The undisputed evidence also establishes that Defendants believed Plaintiff stole the bottle of wine and terminated his employment based only upon that belief.

■■■■ Under *Tate v. Browning–Ferris, Inc.*, 833 P.2d 1218 (Okla.1992), a cause of action for violation of public policy exists when a plaintiff is terminated for a discriminatory reason. The inquiry on summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512. A party must designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553. A witness' conjecture is not evidence, does not raise an inference of discrimination, and does not allow a plaintiff to avoid summary judgment. *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir.1988).

Pursuant to Fed.R.Civ.P. 56, the court finds that Defendants are entitled to summary judgment as a matter of law on Plain-

tiff's claim for violation of Oklahoma public policy. The court finds that Plaintiff has not presented sufficient evidence to raise a genuine issue of material fact as to his wrongful discharge claim.

### Plaintiff's Claims for Tortious Interference

Plaintiff's complaint alleges that, subsequent to his termination from employment, Defendant Rayburn informed "prospective employers" that Plaintiff had been discharged from employment with Philip Morris for dishonesty and theft. Plaintiff alleges that these statements caused him to be deprived of advantageous contract, employment and economic relations. The alleged prospective employers were Dyana Azarpour, Richard Phillips, and Sam Azhari, who were also customers of Philip Morris. Plaintiff called on these customers during his employment with Philip Morris. Plaintiff also contends for the first time in the lawsuit in responding to Defendants' motion for summary judgment, that Defendants' alleged conduct tortiously interfered with contracts, employment and prospective economic relations with unnamed "prospective employers."

Under Oklahoma law, the elements of a cause of action for tortious interference with contract are (i) that the plaintiff had a contractual right that was interfered with; (ii) that the interference was malicious and wrongful and that such interference was neither justified, privileged nor excusable; and (iii) damage was proximately sustained as a result of the complained interference. *Ellison v. An-Son Corp.*, 751 P.2d 1102, 1106 (Okla.App.1987). The right to recover for the unlawful interference with the performance of a contract presupposes the existence of a valid enforceable contract. *Id.* at 1106.

Plaintiff has not alleged that he had a contract with Ms. Azarpour, Mr. Phillips, Mr. Azhari or any unnamed "prospective employer." Because Plaintiff fails to even allege that he had a contract with any prospective employer, his claim for tortious interference with contract must fail.

In addition to failing to allege the existence of contracts, Plaintiff's claim for tortious interference with contract must fail because neither Ms. Azarpour, Mr. Phillips, nor Mr. Azhari failed to honor "contracts" with Plaintiff because of any statement allegedly attributable to Defendant Rayburn. Plaintiff, in fact, admits Defendants' Undisputed Material Fact Nos. 9 and 10. In their Undisputed Material Fact No. 9 based on Ms. Azarpour's deposition testimony, Defendants state that Ms. Azarpour did not fail to hire Plaintiff because of any statements allegedly made by Defendant Rayburn, but rather only failed to hire him because she did not want Plaintiff to have to deal with working with Philip Morris representatives who called on her store, and because she did not believe she could pay Plaintiff an adequate salary. Defendants state in their Undisputed Material Fact No. 10 based on Mr. Phillips' deposition testimony, that Mr. Phillips had no openings in his grocery store and that had a position been available any alleged statements by Mr. Rayburn would not have had any impact on Mr. Phillips' hiring decision. Mr. Azhari's decision not to hire Plaintiff was based upon statements he heard from third parties other than Mr. Rayburn, and he would not have hired Plaintiff based on those statements even if Defendant Rayburn had never made any statements to him.

Plaintiff admitted during his deposition testimony that he knew of no prospective employers other than Ms. Azarpour, Mr. Phillips and Mr. Azhari who allegedly denied him employment because of statements made by Mr. Rayburn. Because Plaintiff has produced no evidence that he had contract with other "prospective employers", any claim regarding unidentified persons must fail.

Plaintiff's claim for tortious interference with contract must fail also because he did not suffer any damage. He alleged the existence of no contracts and, if no contracts existed, Plaintiff could not have been damaged.

■ A claim for tortious interference with employment presupposes an employment relationship. *Haynes v. South Com. Hosp. Mgmt, Inc.,* 793 P.2d 303 (Okla.1990). Plaintiff had no employment relationship with any "prospective employer" and, as discussed, any "prospective employer" never contemplated an employment relationship. Again, Plaintiff suffered no damage.

■ A claim for tortious interference with prospective economic relations involves interference with a reasonable expectation of profit. *Overbeck v. Quaker Life Ins. Co.,* 757 P.2d 846 (Okla.App.1988). Any statements allegedly made by Defendant Rayburn did not interfere with Plaintiff's prospective economic relations because neither Ms. Azarpour, Mr. Phillips, Mr. Azhari, nor any unnamed "prospective employer" failed to hire Plaintiff because of any statements allegedly made by Mr. Rayburn. Plaintiff had no reasonable expectation of profit and suffered no damage.

Defendants are entitled to summary judgment on Plaintiff's claims for tortious interference with contract, employment and prospective economic relations. Plaintiff has failed to submit any evidence that Defendants tortiously interfered with a contract, employment or prospective economic relations. To the contrary, the evidence presented to the court is undisputed that none of the alleged prospective employers Plaintiff specifies ever intended that any kind of a contractual, employment or economic relationship between themselves and Plaintiff would exist.

### Plaintiff's Claim for Intentional Infliction of Emotional Distress

■ Plaintiff contends that Mr. Rayburn's alleged statements to Ms. Azarpour, Mr. Phillips, Mr. Azhari and unnamed "prospective employers" concerning the reason for Plaintiff's termination from employment give rise to a cause of action for intentional infliction of emotional distress. According to Plaintiff, the following acts give rise to his cause of action: (i) Mr. Rexrode instructed Plaintiff at one time to take unauthorized "mag" wheels off of his company van in order to reduce the likelihood of theft and Plaintiff believed that Mr. Rexrode was "out to get him"; (ii) Mr. Mitchum, Plaintiff's former supervisor and the individual who hired him, worried about "climbing the corporate ladder" and went along with whoever planned the "scheme" to terminate Plaintiff; (iii) Philip Morris "allowed" Mr. Rayburn to make the statements Plaintiff attributes to him; and (iv) Philip Morris Management did not conduct an investigation into Plaintiff's termination after the fact. Plaintiff also contends, without citation to authority, that his claim for intentional infliction of emotional distress turns on whether he actually stole the bottle of wine from the country club.

However, the issue on Plaintiff's claim for intentional infliction of emotional distress is not whether he did or did not steal the bottle of wine, but rather is whether Defendants' conduct rises to the level necessary to support the claim. This issue is initially one of law for the court and liability may be found only where a defendant's conduct has been extreme and outrageous:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'.

*Eddy v. Brown,* 715 P.2d 74, 77 (Okla.1986); *Bostwick v. Atlas Ironmasters, Inc.,* 780 P.2d 1184, 1188 (Okla.App.1988); *Pytlik v. Professional Resources, Ltd.,* 887 F.2d 1371, 1379 (10th

**1470**

Cir.1989); Restatement (Second) Torts, § 46.

Even if Plaintiff's allegations are true, as a matter of law Defendants' alleged conduct does not rise to the level necessary to support a claim for intentional infliction of emotional distress. As the above-quoted language shows, Plaintiff's allegations that Defendant Rayburn told certain persons the reason for his termination does not even rise to the necessary level. Further, even Plaintiff does not contend that Mr. Rayburn intentionally meant to upset him and, as for Philip Morris' intent to harm him, Plaintiff believes that the company was neutral. The alleged conduct by Mr. Rexrode, Mr. Mitchum, and Philip Morris Management, even if true, simply does not rise to the level of "outrageous" conduct necessary for Plaintiff to sustain his claims. As a matter of law, the court finds that such conduct does not rise to the level necessary to support a claim for intentional infliction of emotional distress. The court finds that Defendants are entitled to summary judgment on Plaintiff's claim for intentional infliction of emotional distress.

### Plaintiff's Claim for Defamation

Plaintiff alleges that he was defamed by (i) Defendant Rayburn telling Ms. Azarpour that he had been terminated for stealing a bottle of wine; (ii) by Defendant Rayburn telling Mr. Phillips that Plaintiff had been terminated for stealing a vase; (iii) by Defendant Rayburn allegedly telling Mr. Azhari that Plaintiff had been terminated for stealing an antique vase; (iv) by employees of Philip Morris telling other employees of Philip Morris that Plaintiff had been terminated and the reasons therefore; (v) by Philip Morris sending a letter to the Oklahoma Employment Security Commission ("OESC") explaining the reasons for Plaintiff's termination; (vi) by Defendant Rayburn telling two employees at Consolidated Wholesale after having been asked by those employees, at Plaintiff's request, the reason for Plaintiff's termination; and (vii) by Plaintiff informing unnamed "prospective employers" the reason for his termination.

Under Okla.Stat. tit. 12, § 1442(3), the slander Plaintiff apparently contends occurred is defined as a false and unprivileged communication which tends directly to injure an individual in respect to his business, either by imputing to him general disqualification in those respects in which his business peculiarly requires, or by imputing something with reference to the individual's business that has a natural tendency to lessen its profit. As a defense to a claim of slander, a defendant may deny and offer evidence to disprove the charges made or he may prove that the matter charged as defamatory was true and, in addition thereto, that it was published or spoken under such circumstances as to render it a privileged communication. Okla.Stat. tit. 12, § 1444.1.

In a defamation case, it must be determined, under all of the existing circumstances, that the recipients of the alleged communication attributed the same defamatory imputations as the plaintiff did to the language used in the communication. *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 169 (10th Cir.1968). The issue in a defamation case is whether the plaintiff's reputation has been harmed. It is the injury to reputation and not to the feelings of the individual that is the subject of redress. The language in the alleged defamatory communication must tend to lower the plaintiff in the estimation of men whose standard of opinion the court can recognize. *Wiley v. Oklahoma Press Pub. Co.*, 106 Okla. 52, 233 P. 224 (1924).

Plaintiff did not produce the testimony or affidavit of a single individual who believed that he stole the bottle of wine, who does not consider Plaintiff to be an honest and honorable person, or who considers that Plaintiff is not fit to conduct business because of statements attributed to Defendant Rayburn. Plaintiff's reputation, both personal and business, has not been harmed because of statements he attributes to Mr. Rayburn. Ms. Azarpour did not believe the statements allegedly made and the alleged statements did not affect her opinion of Plaintiff in any manner. She did not fail to hire Plaintiff because of

statements attributed to Defendant Rayburn. Ms. Azarpour still believes Plaintiff is an honorable and honest individual and even signed a "character letter" to that effect.

Mr. Phillips did not believe that Plaintiff stole the bottle of wine and his opinion of Plaintiff's reputation was not impacted in any manner by any statements attributed to Defendant Rayburn. Mr. Phillips would have hired Plaintiff even after hearing about Plaintiff's stealing the wine.

While Mr. Rayburn did meet with Mr. Lamun and Mr. Wolfe of Consolidated Wholesale, he met with them after Plaintiff had informed them of the reason for his termination, and Plaintiff was well aware that they were going to meet with Mr. Rayburn. At that meeting, according to Plaintiff, Mr. Rayburn inform them only that Plaintiff had been terminated for stealing wine and even informed them, again according to Plaintiff, that he did not believe Plaintiff took the bottle of wine. According to Plaintiff, neither Mr. Lamun or Mr. Wolfe believed that Plaintiff took the wine, and Mr. Wolfe even signed a "character letter" stating in effect that he believes Plaintiff to be an honest person.

Mr. Azhari had been informed by third persons that Plaintiff had been terminated for stealing an antique vase while at a company function in Louisiana, and that Plaintiff was drunk at the function. According to Mr. Azhari, if Defendant Rayburn said anything, he only confirmed the story which Mr. Azhari had already heard. Mr. Rayburn's alleged remark had nothing to do with Mr. Azhari's opinion of Plaintiff because he would not have hired Plaintiff based upon what others had told him.

■ Even if Defendant Rayburn make the statements which Plaintiff attributes to him, the statements were made to Ms. Azarpour, Mr. Phillips, Mr. Lamun, and Mr. Wolfe were true, and truth is an absolute defense to a claim of slander. *Melton v. City of Oklahoma City*, 928 F.2d 920, 929 (10th Cir.1991); *M.F. Patterson Dental Supply*, 401 F.2d at 169–70; Okla.Stat. tit. 12, § 1444.1. The only reason Plaintiff was terminated from Philip Morris was be-cause of his dishonesty for stealing the bottle of wine and for his insubordination. Mr. Rayburn allegedly informed people, other than perhaps Mr. Azhari, only that Plaintiff was terminated for stealing a bottle of wine, which is true. Such statements cannot be defamatory as a matter of law.

■ An employer has a right to terminate its sales representative and to notify customers and prospective customers of the termination, identify the new sales representative, and tell customers the reason for the sales representative's termination, even though that reason may be injurious or damaging to the discharged sales representative, provided it is done without malice or evil intent to injure or damage the terminated employee and for the purpose of protecting or promoting the employer's business. *M.F. Patterson Dental Supply*, 401 F.2d at 170–71. Plaintiff fails to show that there was any malice on the part of Defendants Rayburn and Philip Morris. To the extent Mr. Rayburn even communicated with the named customers, he had the right to inform them of Plaintiff's termination and the reasons therefor. The court therefore finds that even if Defendant Rayburn made the statements attributed to him, the statements were privileged communications and cannot be defamatory as a matter of law.

■ With respect to the alleged publication of Plaintiff's termination and the reasons therefor by Philip Morris employees to other Philip Morris employees, such statements cannot be defamatory as a matter of law. It is well settled under Oklahoma law that statements by an employee of a company to another employer of the same company are not considered defamatory and are not considered communications to third parties. *Magnolia Petroleum Co. v. Davidson*, 194 Okla. 115, 148 P.2d 468 (1944); *Messina v. Kroblin Transp. Systems, Inc.*, 903 F.2d 1306, 1309 (10th Cir.1990); *M.F. Patterson Dental Supply Co.*, 401 F.2d at 171. Furthermore, Plaintiff produced no specific evidence concerning alleged communications between employees.

As for Plaintiff's claim that he was defamed because Philip Morris sent a letter to the OESC which stated the reasons for his termination, the communication is absolutely privileged and cannot be defamatory as a matter of law. Under Okla.Stat. tit. 12, § 1443.1. a privileged publication or communication is one made in any legislative, judicial, or other proceeding authorized by law. The communication sent by Philip Morris to the OESC in response to the OESC's request for information from the company after Plaintiff applied for unemployment benefits. The communication stated that Plaintiff had been terminated for dishonesty, which was true, and is a proceeding authorized by law.

In regard to the "compelled" statements Plaintiff alleges he made to unnamed "prospective employers", Plaintiff's claims of defamation must fail because he produced no evidence concerning these allegations. Also, Plaintiff cited no authority to support such a cause of action, and the court is aware of no Oklahoma authority supporting such a cause of action.

The court finds that Defendants are entitled to summary judgment on Plaintiff's claims for defamation. Even if Defendant Rayburn make any of the statements attributed to him, those statements, other than the one perhaps allegedly made to Mr. Azhari, were true in that the reason for Plaintiff's termination from employment was his dishonesty for stealing the bottle of wine. In addition, the statements were privileged communications made to customers of Philip Morris and there was no malice on the part of Defendants Rayburn and Philip Morris. As for the statement Mr. Rayburn allegedly made to Mr. Azhari, that statement cannot be defamatory as a matter of law. Mr. Azhari's deposition testimony established that the alleged reason for Plaintiff's termination had already been communicated to him by third parties other than Mr. Rayburn. Plaintiff could not have been damaged by any statement allegedly made by Mr. Rayburn to Mr. Azhari because Mr. Azhari already believed that Plaintiff was a thief and had predetermined not to hire Plaintiff based upon what he had heard from third parties. The court finds that the communications Plaintiff alleges were made between employees of Philip Morris are not defamatory as a matter of law. The court further finds that the letter sent to the OESC is not defamatory as a matter of law because it is absolutely privileged and was true. Further, the court finds that Plaintiff was not damaged in any way by the alleged defamatory statements because none of the identified "prospective employers" believed Plaintiff unfit for his business occupation. Therefore, Plaintiff's reputation was not harmed based on statements attributed to Defendant Rayburn.

### Plaintiff's Claims for Negligent Retention/Respondeat Superior

Because the court finds that there is no wrongdoing by Defendant Rayburn in this case, Philip Morris and Philip Morris Management are entitled to summary judgment on Plaintiff's claim for negligent retention/respondeat superior. Philip Morris and Philip Morris Management cannot be liable for acts attributable to Defendant Rayburn if he was not guilty of any wrongdoing.

### Plaintiff's Claims against Philip Morris Management

The court finds that Philip Morris Management is entitled to summary judgment on all of Plaintiff's claims. Plaintiff presented no evidence whatsoever that any employee of Philip Morris Management was involved in the decision to terminate Plaintiff's employment or in the post-termination conduct that Plaintiff alleges gives rise to several of his claims. Philip Morris Management and Philip Morris are separate companies. Plaintiff presented no evidence that the court should consider the actions of one to be the actions of the other. Because there is no evidence to link Philip Morris Management to Plaintiff's claims, the court finds that Philip Morris Management is not a proper party to this case and should be dismissed.

In sum, the court finds that Defendants are entitled to summary judgment on all of Plaintiff's state law claims. Plaintiff has failed to produce evidence sufficient to raise a genuine issue of material fact as to any of his claims. The court finds therefore that the evidence Plaintiff has presented to support his state law claims is so weak that a reasonable jury could not possibly find that he is entitled to prevail on those claims. The court believes that Plaintiff should not have filed his state law claims because there is no basis in law or fact for those claims.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Defendants' motion for summary judgment on Plaintiff's state law claims is GRANTED. Accordingly, Plaintiff's state law claims are DISMISSED.